JOHN R. CAULK v. T. D. ANDERSON ET AL.

No. 5222. Decided April 1, 1931.<br/>(37 S. W., 2d Series, 1008.)

*F. M. Pearce, Frank C. Davis* and *Emmett B. Cocke,* for appellant.

When things are admitted it is needless and cumbersome and to the courts objectionable to lose time to prove them. The second amended

original answer of the defendants and the pleading on which they went to trial in this case is signed: "Denman, Franklin & Denman, Attorneys for Defendants, Thomas H. Franklin et al., Independent Executors and Trustees of the Estate of George W. Brackenridge, deceased." R., 13.

The evidence in this record shows convincingly that there is an established custom among the surgeons throughout this country to take into consideration the wealth of a patient in fixing their charge and it looks to us that is the proper way to look at it and the practical way to handle it and to dispose of the question. We all know that surgeons charge according to ability to pay and there is no use to try to deceive ourselves about it. Lawyers do the same thing and there is no use to deny it or try to fool ourselves about that. If a lawyer files a suit for $150 real estate commission in a justice court, and after it is tried there he appeals it to the county court, and later to the Court of Civil Appeals, he will get likely about $75 for his work. If he files a suit on a $10,000 note in the district court and by so doing forces the maker to pay, he will charge $500 to $1,000 though he has not done one-half as much work as in the suit on the $150 real estate commission. According to the contention of appellants he should receive a much larger fee for the justice court suit. But it may be said his responsibility is greater in the district court case and that he should be compensated for that responsibility because his name and professional reputation is endangered. Succession of Haley, 50 La. Ann., 24 Southern Rep., 285; Lange v. Kearney, N. Y. Sup., vol. 4, p. 14; Czarnowski v. Zeyer, 35 La. Ann., 796; Cotnam v. Wisdom, 104 S. W., 164.

The trial court was right in permitting Dr. Caulk to testify to all the matters complained of because this suit was against the defendants as trustees as well as independent executors and there is no inhibition in the statute against Dr. Caulk testifying as against trustees. We therefore contend all of Dr. Caulk's testimony was admissible for that reason and if defendants wanted its effect limited and they were able to show they had that right, they should have asked the court to do it. Newton v. Newton, 77 Texas, 508, 14 S. W., 157; Mitchell v. Mitchell, 80 Texas, 101, 15 S. W., 705; Wootters v. Hale, 83 Texas, 564, 19 S. W., 134; Coffey's Exrs. v Coffey, 35 S. W., 738; Clark v. Clark, 51 S. W., 337; Wells v. Hobbs, 122 S. W., 451; Edwards v. White, 120 S. W., 914.

If the defendants had pleaded that there were heirs who would inherit from Col. Brackenridge and that they had done their duty as independent executors and that conditions had been such that they had not been able to pay off creditors and get the estate in such shape as to distribute it among the heirs of any and the legatees and devisees of Colonel Brackenridge and then established that allegation by proper proof, the evidence of Dr. Caulk might have been excluded by the court except for other reasons hereinafter stated. In view of the entire evidence in the case, Dr. Caulk's

testimony cannot be held prejudicial to appellants for we can disregard every word uttered as to a statement by or transaction with Colonel Brackenridge and the jury's verdict is supported by ample and conclusive evidence. Buckler v. Kueezell, 91 S. W., 367.

*Denman, Franklin & Denman,* for appellees.

Appellee introduced no evidence showing that at the time of the bringing of suit or at any time since that defendants were either independent executors or trustees of the estate of George W. Brackenridge, deceased. American, etc., v. Bangle, 153 S. W., 662.

The contention that the wealth of a patient may be considered in estimating the value of surgical services rendered to him cannot be based upon the ground that the life of a wealthy man or the health of a wealthy man is worthy of more consideration than the life or health of a poor man. No differing value can be placed or should be placed upon human life or health. The poorest of individuals may be of as great value as the richest. To go into the question of determining how valuable is any particular man is to lead one into a field of speculation without boundary. As to the poor man it might be contended that his private character, his lovable nature, his capacity for future accomplishment rendered him of more value than a rich man. On the other hand it might be contended that a rich man by reason of his life or moral character, his personal immoralities, his harshness in dealing with others, his wrongful use of the power of health, his miserliness, his family relations, all went into a makeup that not only rendered him valueless but also made him a positive danger in the world. If we entered such a field of inquiry how many paths must be traveled, how many collateral issues heard, how many varying opinions considered, how many doubts resolved, how many suspicions weighed, accepted or disregarded. If it be contended that wealth authorizes an increase of charge for services rendered, then it would logically follow that poverty demands a decrease and it would become a legal proposition that where the evidence showed the reasonable value of the services actually rendered, then a recovery could be denied for the whole of same if proof be made of the poverty of the person to whom the services were rendered. Swift v. Kelley, 133 S. W., 901; Morris, etc. v. Wood, 26 Southern, 307; Morrell v. Lawrence, 101 S. W., 571; Cotnan v. Wisdom, 104 S. W., 164; Villis v. Downer, 21 Vermont, 419; Hamman v. Willis, 62 Texas, 507-510.

It was strenuously argued in the trial court that if a surgeon was not permitted to testify as to an operation performed on a person who had died since the operation that he, the surgeon, might not be able to prove up his case at all. With reference to the first contention, we deem it sufficient to say that if treatment of a sick person extending over a number of weeks and the performing of a surgical operation upon him is not a transaction, and a very grave one, then it would be most difficult to

determine just what is a transaction. With reference to the second contention, it is sufficient to say that under our statute a witness who is placed under its ban is incompetent to testify and courts cannot destroy a statutory inhibition because they believe it may work a hardship in an individual case. There are contracts that cannot .be proved unless in writing and yet there may be instances where only parole proof is obtainable, and yet it could hardly be contended that courts should disregard the statutes of fraud and admit parol testimony to prove that which under those statutes could only be proved by writings. Article 3716, R. S., 1925; Leahy v. Tinan, 110 Texas, 73; Holland v. Nimits, 111 Texas, 419; Moore v. Willis, 67 Texas, 109; Roberts v. Yarboro, 41 Texas, 449; Heath v. Moore, 146 S. W., 709.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Plaintiff in error, John R. Caulk, brought this suit to· recover of defendants in error, T.· D. Anderson, Thomas H. Franklin, Frank G. Huntress and M. C. Judson, as executors of the will of Geo. W. Brackenridge, deceased, a balance of $10,000, alleged to be the reasonable value of surgical and medical services rendered by plaintiff in error to said decedent. Plaintiff in error plead that Geo. W. Brackenridge was a highly successful business man of advanced age, owning an estate worth more than $1,000,000; that the services rendered by plaintiff in error involved his relief from great suffering and the prolongation of his life; and that the performance of such services required the highest professional skill based on long experience.

Besides demurrers and limitations defendants in error answered with a general denial and a special plea of payment by Geo. W. Brackenridge of $5,000 to the full satisfaction of any demand of plaintiff in error and that if said sum was not so received then defendants in error were entitled to recover of plaintiff in error $4,000 because his services were not reasonably worth more than $1,000.

The jury found a special verdict to the effect that $10,000 was reasonable compensation for the services of plaintiff in error and that the $5,000 was not paid or accepted in full settlement. Judgment was rendered in favor of plaintiff in error for a balance of principal and interest amounting to $7,279.17, which was reversed by the Honorable Court of Civil Appeals. 5 S. W. (2d) 816.

The first ground assigned by the Court of Civil Appeals for ordering a reversal of the trial court's judgment was the absence of evidence that defendants in error were trustees and executors of the will of Geo. W. Brackenridge, deceased, at the date of the trial. The amended original petition, on which the case was tried, averred that Geo. W. Brackenridge died December 28, 1920, leaving a lawful will, which was afterwards admitted to probate by the county court of Bexar county, Texas, and in which defendants in error were appointed independent executors,

and trustees of said will; and that the county court designated defendants in error as such trustees and executors. The prayer of the petition was for judgment for the amount of the claim sued on against defendants in error in their capacities as executors. The facts set up in the petition showed no liability to plaintiff in error save from the estate of Geo. W. Brackenridge, deceased.

The answer on which the case was tried is signed by the attorneys·for "defendants Thomas H. Franklin et al., independent executors and trustees of the estate of Geo. W. Brackenridge, deceased." Among other facts, the executors and trustees specially alleged in their answer that plaintiff in error held $5,000 paid him by Geo. W. Brackenridge with knowledge that the estate considered that said sum was paid in full settlement of plaintiff in error's claim, and that plaintiff in error should not be allowed to maintain an action for any further sum without refunding the $5,000 "to the said executors and trustees". Defendants in error, after alleging that $1,000 was reasonable compensation for all services rendered Geo. W. Brackenridge, · by plaintiff in error, averred that plaintiff in error "has become bound and indebted unto them and legally promised to pay to them the said sum of $4,000 with legal interest," and they pray for the recovery from plaintiff in error of $4,000 and interest in their capacities as executors and trustees.

It thus appears that plaintiff in error and defendants in error united in pleading that at the date of the trial the defendants in error were the duly appointed and acting trustees and executors of the probated will of Geo. W. Brackenridge, deceased. The Court of Civil Appeals should not have reversed a judgment for failure to prove a fact admitted by all parties. We have already declared at the present term that the decisions of the Supreme Court "are conclusive that there is no need to prove a fact admittd in pleadings of all parties." Lafield v. Maryland Casualty Co. (Texas Sup.), 33 S. W. (2d) 187, 189.

By special exceptions to certain averments of the amended original petition, by objections to the introduction of testimony, and by requested instructions, defendants in error urged that the wealth of Geo. W. Brackenridge could not be properly considered by the jury in determining the reasonable value of medical and surgical services rendered unto him. The trial court permitted plaintiff in error to plead and prove Brackenridge's wealth, and refused to instruct the jury to disregard the proof. The Court of Civil Appeals concluded that such action of the trial court constituted reversible error. The difficult and important question for determination on this writ of error is whether the jury may rightly consider the wealth or poverty of a patient in fixing the reasonable value of the services of his physician and surgeon.

The authorities are divided on the question. The reason for the rule denying the admission of testimony showing the patient's financial condi-

tion is clearly stated in a leading case by the Supreme Court of Iowa, as follows:

"But the value of a service depends upon the difficulty of rendering it and the skill required in its performance, and, sometimes, upon the results accomplished, and not upon the riches or the poverty of the person for whom the service is performed." Robinson v. Campbell, 47 Ia., 628.

The Iowa Supreme Court supports this conclusion on page 627 by arguing:

"There is no more reason why this charge should be enhanced on account of the ability of the defendants to pay, than that the merchant should charge them more for a yard of cloth, or the druggist for filling a prescription, or a laborer for a day's work."

Our examination of the decisions, such as Swift v. Kelly, 63 Texas Civ. App., 270, 133 S. W., 901, 903; Morrissett, Exec., v. Wood, 123 Ala., 391, 26 So., 307; Cotnam v. Wisdom, 83 Ark., 601, 104 S. W., 164, 12 L. R. A. (N. S.), 1093; Morrell v. Lawrence, 203 Mo., 363, 101 S. W., 574, 575, 120 Am. St. Rep., 660, discloses no other reason for the rule excluding this sort of testimony.

We cannot accept the contention that this question can be rightly determined by regarding the physician's and surgeon's professional services as involving no elements differing from a merchant selling a yard of cloth or a laborer digging a ditch. Such a view disregards the essential purpose of the employment of the physician or surgeon, which is to relieve the pain, restore the health, avert the death, and prolong the life of a human being. Since a cardinal object of the employment is to prolong the life and restore the health of a human being, any evidence bearing on the pecuniary value of such life and health cannot be logically ignored in the search for the truth as to reasonable compensation for the services rendered under the employment. Even the Iowa Supreme Court in the decision referred to above intimates that results accomplished cannot be always ignored in arriving at reasonable compensation for the physician or surgeon.

The true principle which must govern our decision underlies the settled rule in this state in negligence cases that in ascertaining pecuniary loss in cases of death from personal injuries, or in ascertaining pecuniary loss from permanent personal injury, the jury may consider not only the age and occupation and the habits and health of the deceased, or of the injured party, but the amount and value of his property and his earning capacity. H. & T. C. Ry. Co. v. Cowser, 57 Texas, 304, 305; Cameron Mill & Elevator Co. v. Anderson, 98 Texas, 160, 81 S. W., 282, 1 L. R. A. (N. S.) 198; G. C. & S. F. Ry. Co. v. Younger, 90 Texas, 392, 38 S W., 1121; C. R. I. & G. Ry. Co. v. Trippett, 50 Texas Civ. App., 279, 111 S. W., 762, 763.

In pointing of the testimony which ought to be offered to enable a

jury to correctly determine the pecuniary loss of parents from the death of a son, the Supreme Court said:

"This testimony would include the circumstances of the deceased; his occupation, age, health, habits of industry, sobriety and economy, his skill and capacity for business, the amount of his property, his annual earnings, and the probable duration of life. Pierce on Railroads, 396; 2 Thomp. on Neg., 1290, both citing numerous authorities in notes.

"In the case now before the court, though there was testimony showing that the deceased had at one time contributed some property to the plaintiffs, and had at some time previously to his death thus contributed two-thirds of his wages, yet the plaintiffs did not show his pecuniary circumstances, and what his wages had been or then were, though it was evident that this testimony was easily accessible.

"Without such evidence the verdict of the jury could have been but little more than a merely speculative one, and the court had no standard by which to determine its correctness." H. &. T. C. Ry. Co. v. Cowser, 57 Texas, 304, 305.

In the case of Cameron Mill & Elevator Co. v. Anderson, 98 Texas, 160, 81 S. W., 282-283, 1 L. R. A. (N. S.) 198, the rule admitting testimony to show one's financial circumstances in death cases is held applicable to the ordinary action for permanent personal injuries. In the opinion it is said:

"In cases of the former class the beneficiaries are not entitled to recover all that the deceased might have earned, had he lived, but only so much thereof as they would probably have received; whereas, in cases of the latter class, the plaintiff is entitled to recover for all that he has probably deen deprived of earning by the infliction of the injury."

Had the patient Brackenridge suffered permanent injury or lost his life as the proximate result of negligence in the performance of plaintiff in error's services as physician or surgeon, no one could question that he, or a dependent relative, might have proven his wealth and business capacity, under the established law in Texas, in an action to recover the damages for which plaintiff in error would have been liable. Such testimony would be admissible because it would help to arrive at the pecuniary value of the patient's health and life. For the same reason testimony of a patient's wealth is admissible as a circumstance to determine the value of services resulting in his restoration to health and capacity to perform his customary duties, as well as the prolongation of his life.

In expressly approving a charge in a death case, authorizing a jury in assessing actual damages, to consider among other matters the amount of the decedent's property, the Supreme Court of Kansas, through Justice Brewer, said:

"That the purpose of the statute was to give to the survivors compensation for the value of the life taken away may be conceded, and there-

fore all the elements which go to make that life valuable are proper matters of consideration. * * * In the very nature of things it seems to us an exact and uniform rule for measuring the value of the life taken away to the survivors is impossible. The elements which go to make up the value are personal to each case. All that can well be done is to say that the jury may take into consideration all the matters which go to make the life taken away of pecuniary value to the survivors, and, limited by the amount named in the statute, award compensation. * * * The instructions as given in this case find abundant support in the latest and best decisions and do not present matters other than those proper for the consideration of the jury." K. P. Ry. Co. v. Cutter, 19 Kan., 91, 92.

The Secretary of the Interior of the United States, in reviewing a report, soon to be available, of a Committee on Costs of Medical Care, sponsored by the greatest American fundations, states that in this country there is a "sliding scale for the costs of the same medical services, which may vary from $25 to $10,000, according to the wealth of the individual." Hence, patient and physician must concur in regarding the patient's ability to pay as a matter to be properly taken into consideration in fixing, by express contract, fair medical fees. That which parties quite universally regard as important or even controlling in fixing the value of a certain service by express agreement ought not to be required to be wholly ignored in a conscientious effort to arrive at the reasonable value of. the same service when that value has not been agreed upon.

Adopting this view, the court in Schoenberg v. Rose, 145 N. Y. Sup., 833, declared.

"The deceased left a very large estate, evidence as to the value of which was received over the objection of the defendant's counsel. * * * The financial condition of a patient is an element that it may be assumed is considered by both physician and patient when the services are contracted for, rendered and accepted, and may also be considered by the court in determining the reasonableness of the charge; and that element should apply to a case where there is and was no contract, but a mere fiction of the law creating one."

The Supreme Court of Pennsylvania in following the rule in Louisiana, which is the converse of that declared in Iowa in Robinson v. Campbell, supra, stated:

"What would be a proper charge for the same service to a man fully able to pay would be excessive to a man of limited means, and what would be willingly done for the indigent without thought of financial reward should be compensated for by one who can afford to pay on the scale which doctors of repute measure as the proper one. Only on such a basis can those who devote their lives to ministering to human suffering in some degree be fairly paid: Succession of Levitan, 143 La., 1025, 79 So., 829; Young Bros. v. Succession of Von Schoeler, 151 La., 73, 91 So.,

551. As was said in Levitan case: It is a matter of common information that physicians and surgeons do not regulate their charges by any fixed standard of pecuniary value, but, to a certain extent, base them on the ability of the patient to pay, and, on that basis, more frequently than otherwise, perhaps, are but poorly compensated.'" Pfeiffer v. Dyer, 295 Pa. St., 311, 145 Atl., 284-285.

The services of an attorney in capital cases most nearly correspond to those of the surgeon in capital operations to avert imminent death. In capital cases, how could it be reasonably denied that a jury might reasonably consider the client's income and estate and the excess of the value of his services in its management over the income which might otherwise be derived from the estate, in estimating either the pecuniary benefit to accrue to the client from an acquittal or the responsibility and burden of the attorney? And, this court has said that where the burden of the attorney is increased or diminished thereby, the jury may consider the wealth or poverty of the client in determining the reasonableness of the attorney's fee. I. & G. N. Ry. Co. v. Clark & Dyer, 81 Texas, 50, 16 S. W., 631; Hamman v. Willis, 62 Texas, 510.

The Texas doctrine here accords with the opinion of Associate Justice Grier of the Circuit Court of the United States in Lombard v. Bayard, 1 Wall. Jr., 196, 15 Fed. Cas., 795 (affirmed in 9 How., 50 U. S., 530), where it is said:

"Every gentleman of the bar well knows that there cannot be any one rule of charges in the nature of a horizontal tariff for all cases. Often, where the parties are poor and the matter in contest is small, counsel receive but very inadequate compensation for their exertion of body and mind; and for myself I know that for some of the most severe labour of my professional life I have been the least well paid. In other cases, where the parties are wealthy, and the sum in controversy large, they will receive a tenfold greater compensation for perhaps a tithe of the same labour. In some cases the whole sum in dispute would be poor compensation. In others five per cent. of it will be very liberal. Hence, in all cases, professional compensation is gauged not so much by the amount of the labour, as by the amount in controversy, the ability of the party, and the result of the effort. And this is perfectly just."

Our conclusion is that the Court of Civil Appeals erred in reversing the judgment of the district court because plaintiff in error was permitted to plead and prove Geo. W. Brackenridge's wealth.

A final reason given by the Court of Civil Appeals for reversing the judgment of the district court was the admission of testimony of plaintiff in error to transactions with and statements of Geo. W. Brackenridge, though he was not called to testify by opposing parties in violation of article 3716 of the Revised Statutes.

Plaintiff in error urges that this testimony was not forbidden by the

statute because defendants in error were sued as trustees. The petition states no cause of action against defendants in error in any other capacity than as executors representing Geo. W. Brackenridge's estate. Not a fact is averred on which they could otherwise be adjudged liable. Had any issue been tendered against defendants in error in any other capacity than as executors, still the testimony ought to have been excluded under the rule announced in Spencer v. Schell, 107 Texas, 47, 48, 173 S. W., 867, 868, where the court, in an opinion by Chief Justice Phillips, held that the testimony mentioned in the statute was inadmissible where the action was brought by a party in a representative capacity, though that party was also suing in her individual right. In that opinion it is said:

"If the suit be one by or against an heir in which *'judgment may be rendered for or against him* as such,' the statute applies. In determining the scope of its operation it is evident from its language that no account is to be taken that the judgment may operate for or against the heir in some other capacity. That the judgment may so operate, is not by statute recognized as the test of its application. But what it constitutes as the test and inquiry is: May such a judgment be rendered as will operate for or against him in the capacity of an heir? If so, unless called by him, the adverse party is rendered an incompetent witness as to transactions with or statements by the decedent. The clause in the statute, 'in which judgment may be rendered for or against them as such,' means this, or it means nothing. To hold the adverse party a competent witness as to such testimony in a suit like the present one would necessitate that the statute be construed as operative in actions by or against heirs only where judgment might be rendered for against them *exclusively* as such, the effect of which would be to engraft an additional provision upon it."

The judgment of the district court having been properly reversed by the Court of Civil Appeals, for the admission of testimony which was not allowed by the statute, it is ordered that the judgment of the Court of Civil Appeals be affirmed. The case is remanded to the district court for a new trial in accordance with this opinion.