**TEXAS LIFE INS. CO. v. HATCH et al.**

**No. 2319.**

Court of Civil Appeals of Texas. Eastland.

Dec. 18, 1942.

Rehearing Denied Jan. 15, 1943.

Alva D. Mabray, of Waco, for appellant.

McMahon, Springer & Smart, of Abilene, for appellees.

GRISSOM, Justice.

Oneta Hatch, et al., beneficiaries in a $1,000 life insurance policy issued to Willie Elizabeth Brown, deceased, and N. E. Springer and others, assignees of an interest in said policy, recovered judgment against the Texas Life Insurance Company for the amount of said policy, penalty and attorney's fees. The Insurance Company has appealed.

The Insurance Company alleged that Mrs. Brown, on September 13, 1940, submitted to it a "non-medical" application for insurance; that the Insurance Company acted solely upon said application in issuing its policy, which was issued September 24th and delivered to Mrs. Brown on September 27th, 1940; that the application and policy provided the policy was not to be effective unless delivered to Mrs. Brown while she was in good health; that in her application, Mrs. Brown represented that she did not have any disease; that she had never had a cancer, tumors or ulcers. That said representations were material to the risk and induced the company to issue the policy; that they were false and were wilfully made for the purpose of defrauding the company and inducing it to issue the policy. That Mrs. Brown died

April 3, 1941; that her death was caused by cancer; that when the application was made and the policy delivered to Mrs. Brown, she had cancer; that she had then had a lump in her breast for five years; that there had been a continuous discharge therefrom and an unhealed sore with a scab for two years prior to the date of her application; that about two months prior to her application, she knocked the scab off of the sore on her breast, and it thereafter failed to heal or form another scab.

The cause was submitted to a jury on the following issues, which were answered as hereinafter shown:

1. "Do you find from a preponderance of the evidence that Mrs. Willie Elizabeth Brown was not in good health, as that term is defined, on September 13, 1940, the date of the application for the insurance policy in question? Answer: She was in good health.

2. "Do you find from a preponderance of the evidence that Mrs. * * * Brown was not in good health on * * * the date of the issuance of the policy * * *? Answer: She was in good health.

3. "Do you find from a preponderance of the evidence that Mrs. * * * Brown was not in good health * * * on September 27, 1940, the date the policy in question was delivered to and received by her? Answer: She was in good health.

4. "Do you find from a preponderance of the evidence that the answer of * * * Mrs. * * * Brown to question number 14, to wit: 'Have you now any disease or disorder? If so, give details', was false? Answer: No.

5. "Do you find from a preponderance of the evidence that Mrs. * * * Brown intentionally made such false answer to induce the defendant insurance company to issue the policy of insurance involved in this suit on her life? Answer: No.

6. "Do you find from a preponderance of the evidence that the answer of Mrs. Brown to said question number 14 was material to the risk, or actually contributed to the contingency or event upon which said policy of insurance became due and payable? Answer: No.

7. "Do you find from a preponderance of the evidence that the answer of the said Mrs. * * * Brown to question number 16-1, to wit: 'Have you ever had a cancer or tumors or ulcers of any kind?' was false? Answer: No.

8. "Do you find from a preponderance of the evidence that Mrs. * * * Brown intentionally made such false answer to induce the defendant Insurance Company to issue the policy of insurance involved in this suit on her life? Answer: No.

9. "Do you find from a preponderance of the evidence that the answer of Mrs. * * * Brown to said question number 16-1 was material to the risk or actually contributed to the contingency or event upon which said policy of insurance became due and payable? Answer: No.

10. "Do you find from a preponderance of the evidence that the answer of * * * Mrs. * * * Brown to question number 19-1, to wit: 'Have you ever had a tumor or disease of the breast, womb or ovaries?' was false? Answer: No.

11. "Do you find from a preponderance of the evidence that Mrs. Willie Elizabeth Brown intentionally made such false answer to induce the defendant insurance company to issue the policy of insurance involved in this suit on her life? Answer: No.

12. "Do you find from a preponderance of the evidence that the answer of Mrs. Willie Elizabeth Brown to said question number 19-1 was material to the risk or actually contributed to the contingency or event upon which said policy of insurance became due and payable? Answer: No.

13. "What do you find from a preponderance of the evidence would be a reasonable attorneys' fee to the Plaintiff's Attorneys for representing the Plaintiffs in this cause? Answer: $500.00 Dollars."

Issues 5 & 6, 8 & 9, and 11 & 12 were conditionally submitted and were to be answered only in the event of affirmative answers to issues 4, 7, and 10, respectively.

■ Appellant's first fifteen points are that the court erred in overruling (1) appellant's motion for an instructed verdict; (2) appellant's motion for judgment non obstante veredicto; and (3) that the court erred in rendering judgment for appellees because the judgment is not supported by the evidence; and (4) because the verdict is not supported by the evidence and is so contrary to the great weight and preponderance of the evidence as to manifest bias and prejudice of the jury and is palpably wrong. The remaining points (of said first fifteen) assert error in rendering judgment for appellees, because the jury's answer to certain special issues therein

enumerated are either not supported by the evidence, or are against the great weight and preponderance of the evidence. Six of these points present the contentions that the answers to the conditionally submitted issues 5 and 6, 8 and 9, and 11 and 12 are not supported by the evidence. · Under the court's instructions these questions were not to be answered unless the jury, first answered issues 4, 7 and 10, respectively, "yes." Issues 4, 7 and 10 were each answered "no" and issues 5, 6, 8, 9, 11 and 12 should not have been answered at all. The answers to said issues were wholly immaterial; they did not affect the judgment required to be rendered by virtue of the answers to the issues upon which they were conditionally submitted, and it is wholly immaterial whether the answers to said conditionally submitted issues—which must be disregarded as immaterial—were supported by the evidence. Speaking generally, said first fifteen points present the contention that the evidence shows conclusively that Mrs. Brown was not in good health, but was afflicted with cancer, when she applied for the policy and it was issued and delivered to her. Appellees reply that there was a conflict in the evidence raising the issues submitted.

The evidence shows that on November 30, 1940, Mrs. Brown went to Dr. E. O. Nichols, Sr. and Dr. E. O. Nichols, Jr., for a physical examination; that they had never seen her before; that they examined her and concluded she had cancer of the breast. On December 13th, 1940, they performed an operation to remove the cancer. Dr. Nichols testified that when Mrs. Brown came to the sanitarium she said there had been a knot on her breast for five years; that there had been a discharge and a scab on it for two years, and that about four months prior to her examination she had knocked the scab off and it hadn't healed. Said doctors testified that in their opinion Mrs. Brown had probably had cancer for about two years. Dr. Nichols, Sr., testified that he could not say definitely when Mrs. Brown became afflicted with cancer. Dr. I. E. Colgin, appellant's medical examiner and one of its officers, testified:

"Q. Doctor, could you tell for certain when you made that examination of that person on November 30, 1940, when that cancer started in that person's body? A. I could not.

"Q. No other man could, could he? A. That's correct.

"Q. The best that that man could do is express an opinion? A. That's correct."

Dr. W. M. McLaury testified that there was no definite way of detecting a cancer other than by making a microscopic examination of the tissues; that when you made such an examination and found cancer, you could not "tell how long that patient had had that malignancy." That if a patient told him that she had "had a mole or lump in the breast for five years that there had been an open sore for two years and a steady discharge therefrom and you would make a microscopic examination of some of ·that tissue, couldn't you estimate fairly close how long that patient had had that?

"A. No. If it had stayed there for as long as two years it looks more like a benign tumor.

"Q. I am saying, Doctor, where that microscopic examination showed the cancerous tissue was there and had been there for two years, there was an open sore and the lump or knot in the breast for five years, you wouldn't address that as a benign tumor? A. No.

"Q. You could estimate how long that had been there couldn't you? A. No.

"Q. But you would know that it had been there all during that lump? A. No.

"Q. You would know it had been there two years while it was draining? A. No, if it's been there two years and been broke down and draining they don't live that long."

"Q. If you had seen a patient who had an abrasion on the breast and it was running, a running sore, and you saw a microscopic test of that made and it showed malignancy and that person told you that that had been that way two years, running, and that that lump had been there five years, would you think they were mistaken? A. Yes, I would."

Dr. McLaury testified that cancers do not have the same history, that they varied almost as much as human beings.

Mrs. Nora Gardner, sister of deceased, testified that she went with deceased to the Nichols Sanitarium on November 30th; that she was with her sister every time she went to the sanitarium and was with her when she was examined and operated, and that said Doctors did not ask deceased how long the sore had been on her breast, or any such question; that after a part of the tissue had been removed and analyzed, said Doctors told her not to tell her sister about

806

her condition; that it was possible Mrs. Brown could have made statements to Dr. Nichols that the witness didn't hear.

Mr. Norris and Mr. Brown, former husbands of deceased, testified that during the times of their marriages with deceased and the few times they had seen her after their separations and before her operation, she appeared to be in good health.

J. B. Tubb, who owned the hotel where deceased cooked until a very short time prior to her visit to Dr. Nichols, testified that he had known the deceased for about two years prior to her death; that during the year prior to her death, until she went to the sanitarium, he saw her every day; that she was working at the hotel "day after day." He further testified:

"Q. During that time, I wish you would tell the Jury whether or not you observed Mrs. Brown's physical condition, apparent physical condition? A. She seemed like she was all right until about—

"Mr. Mabray: That calls for Yes or No.

"Q. Did you have occasion to observe her? A. Yes.

"Q. Tell the jury whether or not she appeared to be in good health? A. She always seemed like she was in good health.

"Q. Do you know whether or not she worked there in the hotel up until the time she went to the sanitarium? A. She worked up until the day before she left.

"Q. She cooked and waited on tables, the general work? A. She done the cooking.

"Q. Do you recall any time during two years that you knew her that she was sick? A. No.

"Q. She was never off of her work on account of sickness? A. She worked until a day before she left.

"Q. Before she left to go to Plainview did she have a conversation with you and make arrangements to leave? A. About two weeks.

"Q. Without going into the details, tell the jury what you did with reference to advancing Mrs. Brown some cash? A. I advanced some money. She wanted to go to Plainview and she had a sister there.

"Q. Did she tell you what she wanted to do? A. Wanted to be examined."

█ The jury was not bound to accept the opinions of the two Doctor Nichols as to the length of time Mrs. Brown had can-

cer. These doctors did not pretend to be specialists in diagnosis and treatment of cancer. Their specialty was surgery. The opinion of Dr. McLaury tended to conflict with theirs. The opinion of expert witnesses, although not disputed, is not conclusive. Their opinion was entitled to only such weight as the jury saw fit to give it. It is established that the opinions of physicians as to an insured's health at some time prior to their examination and observation of the insured is not conclusive. It is also established that non-expert witnesses who have had opportunity to observe the appearance and actions of another, can properly testify that such person was in good health so far as they knew, that she appeared to be in good health, looked healthy as usual, continued her usual work in her customary manner, and the like. That such testimony of lay witnesses, even if opposed by the opinion of able and reputable physicians to the effect that at the time in question such person was not in good health, merely raises an issue of fact for the decision of a jury as to the true condition of such person's health at some prior time. General Life Insurance Company v. Potter, Tex.Civ.App., 124 S. W.2d 409, 411, and cases there cited; Simmonds v. St. Louis, B. & M. R. Co., 127 Tex. 23, 91 S.W.2d 332, 334; Houston Belt & Terminal Ry. Co. v. Vogel, Tex. Civ.App., 179 S.W. 268, 269, writ refused; National Life & Accident Co. v. Muckelroy, Tex.Civ.App., 40 S.W.2d 1115; Guinn v. Coates, Tex.Civ.App., 67 S.W.2d 621, 623; Southern Underwriters v. Stubblefield, Tex.Civ.App., 108 S.W.2d 557, 561; Southern Underwriters v. Sanders, Tex. Civ.App., 110 S.W.2d 1258, 1260; Universal Life & Accident Insurance Company v. Nanes, Tex.Civ.App., 92 S.W.2d 473; 19 Tex.Jur. 354.

█ We recognize the rule applied by the Supreme Court in American National Insurance Company v. Lawson, 133 Tex. 146, 127 S.W.2d 294, 295, as shown by Judge Hickman's quotation from the Corley case (American National Life Ins. Co. v. Corley Co., Tex.Civ.App., 73 S.W.2d 598) as follows: " 'It is now well settled in this state that a stipulation in a life insurance policy that such policy shall not take effect unless the insured is in sound health at the date the policy is delivered is, unless restrained by some statute, valid and enforceable, and it is immaterial whether the insured knew of his condition

in that respect or not. His good faith in believing that he was in sound health at the time the policy was delivered will not authorize a recovery if in fact at the time of the delivery of the policy he was suffering from an ailment of a substantial nature which continued and ultimately caused his death.'"

If, as appellant contends, the evidence conclusively shows Mrs. Brown had a cancer when the policy was applied for and delivered to her, the policy was never in effect and there can be no recovery on it.

■ After a most careful consideration of all the testimony, we are of the opinion that it is not conclusively established that Mrs. Brown then had cancer. Therefore, the jury's verdict is sustained and appellant's first fifteen points are overruled.

■ Appellant's sixteenth point is that the court erred in overruling its plea in abatement. The record discloses that prior to the filing of this suit, appellant filed a suit in McLennan County to cancel the policy. Thereafter, suit to recover on the policy was filed by appellees in Stonewall County and an injunction was obtained restraining appellant from further prosecuting its suit in McLennan County. Appellees filed pleas of privilege in the McLennan County suit. The record discloses, and appellant admits, that appellant agreed that the District Court of Stonewall County had both venue and jurisdiction of appellant's McLennan County suit and that Springer's plea of privilege should be sustained and that case transferred to Stonewall County to be there consolidated with appellee's suit to recover on the policy, and that appellant's McLennan County suit was, by agreement, so transferred to Stonewall County and there consolidated with appellees' suit on said policy. It is unnecessary to state the pleadings or the ground upon which appellant's plea in abatement was overruled. If improperly overruled, such error of the court was waived by appellant thereafter agreeing for its McLennan County suit to be transferred to Stonewall County and consolidated with appellees' suit for enforcement of the policy.

Appellant assigns error to the action of the court in rendering judgment for $500

attorneys fees "because in view of the amount involved herein and the minimum amount of work and services required of said attorney, such fee is exorbitant, and is a violation of the court's discretion in rendering judgment for said additional amount against Appellant Company."

■ This record refutes the contention that a "minimum amount of work and services" was required of appellees' attorney. On the contrary, the record shows much more than the usual amount of time, effort and ability was required of plaintiff's attorney. If the amount of the policy should alone be considered, the attorney's fees found by the jury and expressly approved by the trial court would probably be held excessive, but the face value of the policy is not the sole determining factor. In International & G. N. Ry. Co. v. Clark & Dyer, 81 Tex. 48, 51, 16 S.W. 631, 632, the Supreme Court of Texas held that in determining the reasonable value of the services of an attorney, it was proper to consider "the nature of the litigation, the amount involved, and the interests at stake, the capacity and fitness of plaintiffs for the required work, the services and labor rendered by plaintiffs, the length of time occupied by them, and the benefit * * * derived by defendants from the litigation." Also see Caulk v. Anderson, 120 Tex. 253, 261, 37 S.W.2d 1008; 10 Texas Law Review 354; 5 Tex.Jur. 539; and Southland Life Insurance Co. v. Norton, Tex.Com. App., 5 S.W.2d 767.

Appellant's counsel testified that in his opinion a reasonable fee would not exceed $350. Judge C. E. Coombes testified that in his opinion a reasonable fee for the services rendered was $500.

Realizing that the attorneys fee fixed by the jury and expressly approved by the distinguished trial judge is a large fee for the amount involved, we have given careful consideration to this unusual record. We have applied the rule established in Southland Life Insurance Co. v. Norton, supra, and approve the judgment for attorney's fees.

We have considered all of appellant's contentions and have concluded error is not shown. The judgment is affirmed.