Esir **TOBOLOWSKY**, Administrator With will annexed of the Estate of H. H. La-Master, Deceased, Appellant,

v.

Ola **EASTWOOD**, Appellee.

No. 15861.

Court of Civil Appeals of Texas.

Dallas.

July 21, 1961.

Rehearing Denied Nov. 10, 1961.

Esir Tobolowsky, Dallas, for appellant.

Leake, Henry, Golden, Burrow & Potts and Hartman Hotz, Dallas, for appellee.

YOUNG, Justice.

The suit in trial court was by Ola Eastwood, a widow, against above named estate for alleged debt; and in a non-jury trial, judgment was rendered for plaintiff for $3555.00, with result of this appeal.

Plaintiff had alleged that in a real estate transaction, one W. R. Allen executed a vendor's lien note for $3,000 to H. H. La-Master, payable in annual installments; that on same day LaMaster had endorsed the note to plaintiff Ola Eastwood; the latter having owned the note since said date. She alleged that Allen had made payment of all three installments to La-Master; that when she learned of the first payment to LaMaster of October 24, 1954, she had made demand on him for the remittance of the amount so collected, he promised to make such remittance within the next few days but failing to do so;

that she had not known of the subsequent payments on the note until death of La-Master; the latter receiving all of these payments without her consent and thereby holding the funds for her use and benefit and in trust for her. Plaintiff's claim for debt was presented to defendant administrator and rejected on or about January 23, 1957.

Defendant answered by sworn pleading, denying genuineness of endorsement or transfer to plaintiff, alleging that LaMaster did not for himself, write or make the endorsement, nor did he authorize anyone else to write or make same for him, either above his name or anywhere else on the note; and specifically, did not write or authorize the name of Ola Eastwood in the endorsement, such being without his knowledge or consent; denying consideration for the endorsement, further pleading fraud and statute of limitations.

Appellant's 13 points will be summarized: Court error in rendering judgment for plaintiff where there was no evidence or an insufficiency of evidence to establish that deceased transferred the note in question to plaintiff; that such findings for plaintiff were so against the great weight and overwhelming preponderance of the evidence as to be clearly wrong, manifestly unjust or shocking to the conscience. No evidence that one Paul Kinnamon wrote a material part of the alleged endorsement or that said Kinnamon had any authority to act for deceased; likewise an insufficiency of such evidence. No evidence or insufficiency thereof to establish any consideration for transfer of note in view of defendant's sworn denial of consideration. Error in rendition for plaintiff where the evidence of delivery of note to her was to effect that it was not for purpose of transferring title. Error in that there was no evidence that plaintiff's claim had been presented to the administrator or rejected by him or that suit was filed 90 days thereafter. No evidence that Esir Tobolowsky was acting as administrator at time of trial. Court

error in rendering judgment against Tobolowsky as administrator, there being no evidence that said Tobolowsky had collected any of the monies on the note in question or that he had any of such monies; and error in ordering execution to issue for enforcement of the judgment. Appellee has made appropriate answer to each of above indicated points on appeal.

Mrs. Eastwood was a resident of Oklahoma City at all material dates engaging there in abstract and title work; Mr. LaMaster having formerly lived in that State, being extensively engaged in business ventures and in real estate dealings. Plaintiff and her sister, Mrs. Jean Burnett, also of Oklahoma City, had been long time acquaintances of LaMaster; he using the office of Mrs. Eastwood and her services in his business transactions. The dead man's statute (Art. 3716, Vernon's Ann.Civ.St.) had been invoked, precluding plaintiff from testifying to transactions with deceased; but Mrs. Burnett as a witness (and who had no interest in the suit) testified that Mr. LaMaster was always coming into the office of Mrs. Eastwood "and writing her and having her to do this, do that, put ads in the papers, pay his taxes and close deals"; but not knowing of any services that "he did not pay for."

Coming down to the matter in controversy, Mrs. Eastwood was in Dallas and at the office of Stewart Title Company on August 28, 1953 at the preliminary closing of sale of some Tarrant County acreage by LaMaster to W. R. Allen, the $3,000 note being part consideration. Others present were the purchaser, the seller, LaMaster, and Paul Kinnamon of the Title Company. The deed conveying the property, deed of trust with Mrs. Eastwood, as trustee, had been duly prepared for signatures by the respective parties. The note was signed by Mr. Allen and passed to LaMaster who endorsed same on reverse side. The controversy relates solely whether deceased then requested Kinnamon to write the words "I", "Ola Eastwood," and "Me" in the transfer form above the signature of

LaMaster; the complete wording on reverse side of note, Exhibit 1, as introduced in evidence, reading:

"I hereby sell, transfer and assign to Ola Eastwood the within Note, together with the Vendor's Lien and Deed of Trust Lien on the property securing same, without recourse on me.
H. H. LaMaster."

The sale was not then closed on account of title requirements, the executed papers being retained in escrow by the title company pending completion of these details and final closing; Mrs. Eastwood returning to Oklahoma City.

The sale to Allen was finally closed at office of the title company on September 17, 1953. Mrs. Jean Burnett, sister of plaintiff, going there with Mr. LaMaster, others present being the purchaser Allen and a Mr. Perry, title company representative; Mrs. Burnett testifying that after the closing, Mr. Perry handed the $3,000 note to her, Mr. LeMaster then saying "when we get home (his residence) I want you to write a letter to Ola (Mrs. Eastwood) and send her this"; Mr. Allen then driving the two to the apartment of LaMaster on Miller Street where he dictated to her such a letter with the note enclosed to Mrs. Eastwood at Oklahoma City which letter she mailed. Mrs. Burnett stated that she had written many letters for Mr. LaMaster, as it was difficult for him to do so, due to physical disability; and with reference to the purpose of enclosing the note to plaintiff that Mr. LaMaster had stated "so that she would have it, he wanted her to have this;" the witness not remembering his exact words. She also stated that at time of handling the note everything by way of endorsements was on the back or reverse side.

Allen, maker of the note, though a witness for plaintiff, testified to being in attendance at the August 28th, preliminary conference; that the note was not endorsed in his presence, he having examined it; that no one had ever told him of any trans-

fer of note to Mrs. Eastwood, his first information thereof being in September 1956, after Mr. LaMasters' death (it having been paid to payee therein in full). A Mr. Deason, an accountant with Bell Telephone Company for 25 years, likewise testified that he had acted as attorney-in-fact for LaMaster during the latter years; making all collections on the note in question, having never heard of any assignment of note to plaintiff until the death of LaMaster; on the other hand that the deceased had in fact executed a formal transfer of the note to Frances D. Hawk (formerly secretary of LaMaster) of date November 28th, 1953 but re-transferred to deceased on December 13, 1954.

Photostats of the questioned endorsement appearing on the back of note, "I", "Ola Eastwood" and "Me" is shown below. Exhibit C is the same wording in handwriting of plaintiff Eastwood; Exhibit 8 the same words in the handwriting of Paul Kinnamon and Exhibit 1 is the endorsement as shown on reverse side of note itself.

*Me*

*Me*

*Ola Eastwood*

*Ola Eastwood*

*Ola Eastwood*

*[handwriting samples: "Ola Eastwood", "and Eastwood", "PX 8 - 6 / I"]*

*Exhibit #1*

**Vendor's Lien Note**

(Installment Payments)

**FOR VALUE RECEIVED**

I hereby sell, transfer and assign to

*Ola Eastwood*

the within Note, together with the Vendor's Lien and Deed of Trust Lien on the property securing same, without recourse on *me*

*[signature]*

---

George J. Lacy of Houston, Texas, serving his fourth year as President, American Society of Questioned Document Examiners, called by plaintiff, examined several samples of the handwriting of both plaintiff and Kinnamon. He testified explicitly that the person who wrote above Exhibit 8 (Kinnamon) "also wrote the words 'I', 'Ola Eastwood' and 'me' on plaintiff's Exhibit 1." To the contrary, Kinnamon, title company officer, called as defendant's witness testified positively that he did not write the words "I", "Ola Eastwood" and "me", or any of these words appearing on back of the note, nor were they written on the note at any time in his presence; (plaintiff Eastwood having already testified oppositely on the subject).

As bearing generally on the case are the following items or more or less materiality: That a witness for plaintiff, Phil Eisenhower, testified to being present at the Oklahoma City office of Mrs. Eastwood when the $3,000 note was received through the mails; stating his knowledge of the business relations of plaintiff and deceased over many years; testimony of Mrs. Burnett that in 1957 she had received $1,000 from LaMaster for purchase of furniture shipped by her to Oklahoma City; that Exhibits 6 and 7 were letters written by Kinnamon to plaintiff in intervals between August 28, 1953 and September 17, date of final closing of the Allen transaction and with reference thereto; and defendant's Exhibit 5 was the title policy issued to Allen on September 24, 1953 which did not recite any transfer of note to plaintiff. Incidentally, the memory of witness Kinnamon about the particular transaction was markedly hazy and uncertain, he having closed as many as 200 deals per month in earlier years.

Save as to the authority of Kinnamon to endorse the notes as he did, resolved by the court in favor of appellee, the foregoing facts are practically without dispute. In this connection Art. 5932, § 16, V.A.C.S. provides: "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing; as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument * * *." Under the testimony of Mrs. Burnett, the issue was raised as to whether the note was delivered for a special purpose; and the court's conclusion that the delivery was unconditional has support in the record

as a whole. The settled principle of law as stated in Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 is as follows: "If, discarding all the adverse evidence and giving credit to all evidence that is favorable to the successful party, and indulging every reasonable conclusion that is favorable to him, a trier of the facts may have found in his favor, then it is to be concluded that there is evidence to support the finding, * * *." Appellant's construction of "special purpose" for delivery of the note to appellee would establish deceased as a sort of "Indian Giver", which the court has justifiably rejected.

Relative to the several points raised by appellant on matter of consideration for the note, although the testimony of Mrs. Burnett is somewhat contradictory, yet she finally stated that she had no knowledge of appellee having ever received payment from LaMaster for any work she had done for him; witness Eisenhower testifying that the two had been business associates over the years. The principle of Banks v. Collins, supra, would likewise be applicable to appellant's issue of no consideration, found by the court in favor of appellee.

The remaining points may be disposed of briefly. It is evident from the record that appellee duly presented her claim to appellant administrator, rejected by him with suit being filed within the 90 day period; Sec. 313, V.A.T.S. Probate Code; Mr. Tobolowsky being the duly acting administrator of estate at time of suit. However, the judgment appealed from provided that execution should issue thereon. This was error. Such wording must be eliminated and in lieu thereof the provisions of Sec. 313, supra, be followed that same shall be duly certified to the County Probate Court of Dallas County for observance.

As reformed, all points of error are overruled and the judgment under review is in all respects affirmed.

Appellant Administrator correctly states that there is no evidence as to when the name of LaMaster was written on the endorsement. Our statement in original opinion that "the note was signed by Mr. Allen and passed to LaMaster who endorsed same on reverse side" is accordingly withdrawn.

Administrator strongly attacks our affirmance of cause on numerous grounds. Initially, we may observe that most of the claimed fatal deficiencies of proof arise perforce of appellee's postponement of court action until the death of LaMaster and consequent interposition of Art. 3716, V.A.C.S. (Dead Man's Statute).

■ His point four is again argued at length, asserting error in our rendition "where a finding for the plaintiff is so against the great weight and overwhelming preponderance of the evidence as to be clearly wrong, manifestly unjust or shocking to the conscience"; and extensively reviews the record in such connection. Under such a point it is incumbent on us to "consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict. See cases cited, supra. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict." In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661. We have again reviewed the record in its entirety concluding as before that the case must be affirmed.

The testimony regarding the note's endorsement on reverse side of "I", "Ola Eastwood", and "me", in the handwriting of Paul Kinnamon has already been related. Kinnamon denied this, though the handwriting expert testified to the verity of said writing, plaintiff Eastwood stating that such endorsement was made in her presence by Kinnamon and also in the presence of Mr. Allen and LaMaster. Appellant reiterates that the evidence was insufficient to establish that Kinnamon had any authority to act for deceased. The Dead Man's Statute was interposed to exclude the further answer of Mrs. Eastwood that such endorsement was made at the instance of LaMaster; but a like assent may reasonably be inferred from other facts and circumstances, such as the words and conduct of LaMaster himself. All relevant testimony indicates that Mr. LaMaster wanted plaintiff to have the note, causing Mrs. Burnett after the September meeting to mail the same to Mrs. Eastwood at Oklahoma City so endorsed. And relative to the act of Kinnamon, it is stated in 2 C.J. "Agency" p. 508: "But if an act is done by the agent in the principal's presence, the latter's silence or failure to repudiate will amount to a ratification." See also 2 C.J.S. Agency § 57.

■ Further on points seven and eight appellant there argued: "the burden of proof was on the plaintiff to prove that there was a consideration for the transfer of the note by a preponderance of the evidence, since defendant filed a sworn denial of consideration." The true rule was announced long ago by our Supreme Court through Associate Justice Gaines in Newton v. Newton, 77 Tex. 508, 14 S.W. 157, 158, viz: "The promissory note in controversy did not purport upon its face to be given for a valuable consideration; but, under our statutes, all written instruments import a consideration. Rev.St. art. 4488. It is also provided that the consideration of a written instrument can only be impeached by a sworn plea. Article 1265, Id. Such a plea was interposed in this case, and appellants now contend that the court erred in refusing to charge the jury that the burden was upon the plaintiff to prove that there was a valuable con-

**48**

sideration for the note. The note imported a consideration, *and the burden was upon the defendants to show that there was none.* The effect of the sworn plea was not to shift the burden of proof, but merely to put the consideration in issue." (emphasis ours).

Appellant has offered no evidence whatever on any lack of consideration for the note in question.

 Lastly, error is assigned of no evidence of presentation of claim to the administrator or rejection by him, or that suit was filed 90 days thereafter; also of no evidence that Esir Tobolowsky was acting as administrator at time of trial. These points will be touched upon in adverse order. (1) Timely filing of suit is indicated in supplemental transcript; (2) appellant was sued as administrator of the estate of H. H. LaMaster, deceased, and all defensive pleading was signed in the capacity of administrator; there being no necessity to prove a fact admitted in the adversary's pleading. Caulk v. Anderson, 120 Tex. 253, 37 S.W.2d 1008; and (3) attached to plaintiff's trial petition as exhibits were the note sued upon, the sworn creditor's claim as filed in probate court, and presentation and rejection of claim by said administrator on January 23, 1957. These exhibits do not appear to have been placed in evidence. Said omission becomes immaterial however because the endorsements made or annexed thereto "were not denied under oath." It is provided in § 313, V.A.T.S. Probate Code: "When a claim or a part thereof has been rejected by the representative, the claimant shall institute suit thereon within ninety days after such rejection, or the claim shall be barred. When a rejected claim is sued on, the endorsement made on or annexed thereto shall be taken to be true without further proof, *unless denied under oath.*" (emphasis ours).

Motion for rehearing is overruled.