INTERNATIONAL BROTHERHOOD OF
BOILER MAKERS et al. v.
RODRIGUEZ.

No. 4437.

Court of Civil Appeals of Texas. El Paso.
Nov. 15, 1945.

Rehearing Denied Dec. 6, 1945.

Jones, Hardie, Grambling & Howell, of El Paso, for appellants.

Charles Owen and D. J. Smith, both of El Paso, for appellee.

McGILL, Justice.

This is an appeal from a judgment of the El Paso County Court at Law. The suit was brought by appellee as plaintiff to recover insurance benefits for the loss of

the sight of his eye, from both appellants as defendants. He also sought to recover the twelve per cent statutory penalty and reasonable attorneys' fees prescribed in Art. 4736, R.C.S., Vernon's Ann.Civ.St. art. 4736, with interest on the total recovery at six per cent per annum from August 4, 1943, the alleged date of loss of sight. Trial to a jury resulted in answers to special issues on which judgment was rendered against both defendants for $500 for loss of the sight of plaintiff's left eye, $46.25 interest to date of judgment, $60 penalty and $200 attorneys' fees.

Appellants assign error because the court overruled their motions for a directed verdict and for judgment notwithstanding verdict. They present points to effect that plaintiff failed to introduce any evidence of a contract or policy of insurance sufficient to support a judgment for him.

We shall hereafter refer to the International Brotherhood of Boiler Makers, Iron Ship Builders and Helpers of America as the "Brotherhood," and to The Occidental Life Insurance Company of California as the "Insurance Co."

The Brotherhood is an unincorporated labor organization with its home office in the state of Kansas, having local lodges in Texas. The Insurance Co. is incorporated under the laws of the state of California, and it was conceded by its counsel on oral argument that it is doing business within this state. Plaintiff, who was an employee of the Southern Pacific Railroad, applied for membership in the Brotherhood on January 21, 1943. He paid his dues and was accepted as a member of Local Union No. 216 of the Brotherhood on January 22, 1943. He introduced in evidence Article XII of the Constitution and By-Laws of the Brotherhood in effect when he became a member and at all relevant times thereafter. This article deals with death and disability benefits for members. We reproduce the relevant portions:

"Section 1. The International Brotherhood will procure or provide benefits for all insured members who were in good standing in the International Brotherhood on the 26th day of September, 1925, or who subsequently shall become insured members of the International Brotherhood and who are in good standing on the date of their death or disability, as follows: * * *"

"Section 2. All members who have attained the age of sixteen (16) years and who have not reached the age of sixty (60) years at the time of initiation, last reinstatement or depositing withdrawal card, are eligible and hereby insured as provided for in Sections 1, 3 and 4 of this Article."

"Partial Disability.

"Sec. 4. Every insured member of the International Brotherhood, who is in good standing on the date of disability, shall be entitled to insurance for partial disability without the payment of any additional premium on the following basis, to-wit: In the event that said member at or away from occupation shall lose the sight of an eye, or the complete loss of the use of a foot or leg, as a result of accident, or disease, the sum of Five Hundred ($500.00) Dollars will be paid to said insured member. * * *"

Plaintiff also introduced a certificate, No. 416,398, issued by the Brotherhood, which stated that the Brotherhood had procured insurance on his life in the Insurance Co. "in accordance with the terms and conditions of group policy No. 756100, the benefits of which are summarized as follows: * * *

"III. Partial disability payable to the diseased member

"(a) In the event of entire and irrevocable loss of the sight of an eye * * * as a result of accident or disease, $500.00."

The certificate also stated that it was issued pursuant to Article XII of the Constitution and By-Laws of the Brotherhood. The group policy referred to was not introduced.

The defendants filed an answer and cross-action in which they alleged that the Insurance Co. issued its group policy No. 756100 to the Brotherhood, insuring its members, and plead certain of its provisions as to notice of claim for benefits, which they alleged had not been complied with. In their cross-action they sought to have the group policy cancelled as to plaintiff on the ground that he, well knowing that he had lost the sight of his left eye due to a traumatic cataract, applied for membership in the Brotherhood, and in his application knowingly misrepresented that he was in good health, and had no physical ailments that would tend to shorten his life; that such misrepresentations were unknown to defend-

ants and materially increased the risk under the group policy.

Plaintiff's cause of action against the Insurance Co., as disclosed by the evidence, was based upon the issuance by it to the Brotherhood of its group policy No. 756100, although he erroneously alleged that the Insurance Co. issued him policy No. 416,398 (obviously referring to the certificate issued to him by the Brotherhood) and by his pleadings grounded his cause of action against the Insurance Co. on the certificate.

 Obviously, as conceded by Appellee in his brief, no contractual relation between the plaintiff and the Insurance Co. was shown. He seeks to sustain the judgment against the Insurance Co. on the theory that the contract of Insurance between the Insurance Co. and the Brotherhood was made for his benefit, and as beneficiary he could recover on it under the familiar doctrine of Lawrence v. Fox, 20 N.Y. 268; but there is no competent evidence to establish the terms of such contract. The certificate issued by the Brotherhood which purports to state the terms of group policy No. 756100, admittedly issued by the Insurance Co. to the Brotherhood insuring its members, is clearly hearsay as to the Insurance Co., and although admitted without objection is incompetent to establish any fact necessary to form the basis of a judgment. Texas Co. v. Lee et al., 138 Tex. 167, 157 S.W.2d 628.

On this ground this case is distinguishable from Wann v. Metropolitan Life Insurance Co., Tex.Com.App., 41 S.W.2d 50, relied on by appellant. In the Wann case the certificate was issued by the insurance company, rather than by the Southern Pacific Company, to whom the group policy was issued. It was there held that the certificate, however complete its terms might appear to be, was insufficient to sustain a recovery, since the parties agreed it should be subject to the terms and conditions of the group policy, which was not introduced. The same may be said of the certificate here, apart from its objectionable hearsay character. Therefore, the judgment against the Insurance Co. must be reversed.

 It does not follow that the evidence failed to show a contract of insurance between plaintiff and the Brotherhood. From the above quoted portions of Article XII of the Brotherhood's Constitution and By-Laws it appears that the Brotherhood agreed to procure or provide "benefits" for all "insured" members who were in good standing on the date of their disability (sec. 1); all members who attained the age of sixteen years and who had not reached the age of sixty years at the time of initiation were "insured" as provided in Section 4 (Sec. 2). The evidence shows that plaintiff came within this category. He was forty-three years of age, he had been initiated into the Brotherhood on January 22, 1943, and had paid his monthly dues and insurance premiums during the balance of that year; therefore under the provisions of Section 4 he was entitled to "insurance" for partial disability without the payment of any additional premium on the basis that if he should lose the sight of an eye as the result of accident or disease, $500.00 should be paid to him. By whom? Obviously the Brotherhood. No one else had received any insurance premium, he had no contractual relations with any other person. As far as disclosed by the Constitution and By-Laws, if plaintiff was not insured by the Brotherhood, he was not insured at all. Neither the certificate issued by the Brotherhood nor the group policy issued by the Insurance Co. is mentioned or referred to in the Constitution and By-Laws. The above quoted portions of the Constitution and By-Laws without reference to the certificate or the group policy constituted a complete contract of insurance with plaintiff upon his initiation into the Brotherhood and his payment of monthly dues and insurance premiums.

In International Brotherhood, etc. v. Huval, 140 Tex. 21, 166 S.W.2d 107, 109, Chief Justice Alexander said:

"Whatever contract there was between the plaintiff and the Brotherhood for the payment of disability benefits, was created solely by the Constitution and By-Laws of the Brotherhood."

He was referring to the Constitution and By-Laws as they existed in 1925. These are not available to us, but the holding in that case that the issues between the member and the Brotherhood and between him and the Insurance Co. were entirely severable, and the affirmance of the judgment against the Insurance Co. and its reversal and remand as to the Brotherhood are persuasive that the Constitution and By-Laws of this same Brotherhood con-

stitute an insurance contract between the plaintiff and the Brotherhood here. We so hold.

By appropriate points appellants earnestly insist that the judgment should be reversed because plaintiff failed to sustain the burden resting upon him to establish by sufficient evidence that he suffered the loss of the sight of his eye as a result of accident or disease while his insurance was effective.

In answer to special issue, the jury found that plaintiff had usable vision for practical purposes in his left eye on January 22, 1943. This was the date he became a member of the Brotherhood. Plaintiff testified he first commenced to have trouble with his eyes some time in March 1943; that the first difficulty he noticed was the day before he went to see Dr. Schuster in March; that he then felt like his eyes were crossed; that when he started to climb a ladder on that day it seemed he could see two ladders instead of one (on cross-examination Dr. Schuster testified that if a man sees double this would indicate he has vision in both eyes); that he continued working; that his vision was all right and he could work with it and did work until he was sent to "Frisco" for an operation in July, 1943. This testimony, viewed as we must view it in the light most favorable to plaintiff, is sufficient to sustain the jury's finding above indicated.

If the language used in the contract of insurance is ambiguous, it must be construed strictly against the insurer and in favor of the insured, in order to arrive at the true intention of the parties. McCaleb v. The Continental Casualty Co., 132 Tex. 65, 116 S.W.2d 679.

Section 4 of Article XII of the Brotherhood's Constitution and By-Laws, above quoted, insured plaintiff against the loss of sight of an eye as the result of accident or disease. The Constitution and By-Laws do not specify that the accident must occur or that the disease must originate after the insured becomes a member of the Brotherhood. Generally, in the absence of a stipulation to the contrary, an accident insurance policy takes effect from its date, and will not permit a recovery for a loss occurring prior to such date. 44 C.J.S., Insurance, p. 1267, § 330.

We think the same is true of the contract of insurance evidenced by the Brotherhood's Constitution and By-Laws and plaintiff's initiation into the Brotherhood. To hold that it was contemplated that the Brotherhood should insure plaintiff against loss of the sight of an eye resulting solely from an accident which occurred prior to his initiation would be to impart an unusual and unnatural meaning into the language used. There is no warrant for doing this. General American Life Ins. Co. v. Rios, 139 Tex. 554, 164 S.W. 2d 521 at 523. But under Section 4 above referred to, plaintiff was also insured against the loss of sight of an eye as the result of disease. As above indicated, there is no provision of the Constitution and By-Laws which specifically excepts a disease which existed at the time the insured became a member of the Brotherhood, nor is there a provision specifically excepting a disease caused by an accident. For the latter reason the case is distinguishable from those decisions which hold that under accident policies insuring against bodily injuries or death through external, violent and accidental means, and which result independently and exclusively of all other causes, when an accident causes a diseased condition which together with the accident result in the injury or death, the accident alone is to be considered the cause of injury or death.

See Penn v. Standard Life & Accident Ins. Co., 158 N.C. 29, 73 S.E. 99, 42 L.R.A., N.S. 593, at page 598 (cataract on eye where evidence was conflicting whether it existed prior to or was caused by fall from a train); Federal Life Ins. Co. v. Herring, Tex.Civ.App., 269 S.W. 255 (A traumatic appendicitis); 5 Couch Cyclopaedia of Insurance Law, Sec. 1142, p. 4004 et seq.

The language employed in Section 4 of the Constitution and By-Laws is at least ambiguous as to whether loss of sight by a disease existing at the time plaintiff became a member of the Brotherhood is covered thereby. Applying the well settled rule of construction above referred to, we must construe it strictly against the Brotherhood. We hold that under Section 4, in the absence of misrepresentation or concealment, plaintiff was insured against the loss of sight of his eye as the result of a disease which existed at the time of his initiation into the Brotherhood, or which originated thereafter. This construction is in harmony with the construction which the defendants themselves

840

placed upon the group policy issued by the Insurance Co. and accepted by the Brotherhood, as providing the insurance prescribed by its Constitution and By-Laws. In their cross-action they allege that in October, 1942, plaintiff fell from a railroad engine, suffering an injury to his left eye; that shortly thereafter a traumatic cataract developed, due to which he lost the sight of his eye; that he thereafter applied for membership in the Brotherhood and made the misrepresentations above alluded to in his application. Unless the policy covered loss of sight from a traumatic cataract existing when it was issued, there could have been no misrepresentation in the concealment of these alleged facts, and the cross-action to cancel the policy would have been entirely unnecessary.

 If the plaintiff failed to establish by sufficient evidence the fact that he lost the "usable vision for practical purposes in his left eye" which the jury found he had on January 22, 1943, as the result of accident or disease—a disease which existed when he became a member of the Brotherhood or originated thereafter—there is no basis for the judgment against the Brotherhood. This fact was an essential element of plaintiff's cause of action. If the evidence merely raised an issue as to it, the judgment can not stand. Such issue would not be complementary to any issue submitted, and though not requested, could not be deemed found by the Court so as to support the judgment within the purview of Rule 279, T.R.C.P. The question then arises whether under the evidence such fact was established beyond issue.

 Defendants introduced in evidence a "claim sheet," sworn to by plaintiff, in which he stated:

"On October 1942, I fell off a locomotive while at work, resulting in the loss of my left eye."

When questioned about this plaintiff admitted that he did fall off an engine in October 1942, and that he did not know whether or not he received any injury to his eyes at that time, although he had no cuts or bruises around the eyes, and saw all right until he went to see Dr. Schuster in March, 1943. He testified that he knew he had a cataract when Dr. Schuster told him in March, 1943, and that he had two operations while at San Francisco, the first to remove a cataract, the second to

take out the eye; that his eye was removed on September 4, 1943.

Dr. Schuster, called by defendants, testified that he examined plaintiff professionally twice, once on June 24, 1937, and again on March 12, 1943. On June 24, 1937, the examination revealed that plaintiff had a cataract in his left eye. It was pretty near complete; the vision in the left eye was 20/200 minus—about five per cent normal vision. For practical purposes the sight was lost. On March 12, 1943, plaintiff had a marked reduction in the vision of his left eye, due to a cataract. The cataract was mature at that time. Plaintiff saw only the shadow of fingers held about one foot from the eye. He had between five and ten per cent normal vision in the left eye—ninety-five per cent was lost. The doctor gave as his opinion that the cataract was traumatic, and that it had existed months, maybe years prior to his examination in 1937.

This evidence shows beyond issue that plaintiff lost the sight of his eye which the jury found he had on January 22, 1943, by reason of a cataract which resulted in removal of the eye on September 4, 1943. The word "cataract" had been defined as

"An opacity of the crystalline lens of the eye or of its capsule, obstructing passage of the waves of light." Webster's New International Dictionary, 2nd Ed.

"Pathologically, disease is an alteration of the state of the human body or some of its organs or parts interrupting or disturbing performance of vital functions or a particular instance or case thereof." Same authority, and Words and Phrases, Vol. 12, Perm.Ed., and Cumulative Annual Pocket Parts.

In Mutual Life Insurance Co. v. Simpson, 88 Tex. 333, 31 S.W. 501, 28 L.R.A. 765, 53 Am.St.Rep. 757, cited and quoted by this court in Sovereign Camp, W. O. W. v. Mendez, Tex.Civ.App., 123 S.W.2d 985, Wr.Ref., our Supreme Court said [88 Tex. 333, 31 S.W. 502]:

"The word disease may include, and is often used to designate, ailments more or less trivial. Medical science, as expounded by its experts, has not definitely determined all of the physical ailments which indicate a vice in the constitution, or have a direct tendency to shorten life."

 Under the above definitions and language of the Supreme Court, the cata-

ract itself is the best and all sufficient evidence of disease. If it had existed for months or even years prior to Dr. Schuster's examination in 1937, as shown by his testimony, there can be no doubt but that it constituted a disease; and, if it were traumatic, caused by the fall from the engine in 1942, as deducible from plaintiff's testimony and his admissions in the claim he filed, nevertheless we think it constituted a disease within the meaning of the Brotherhood's Constitution and By-Laws under the applicable strict rule of construction above referred to. We therefore conclude that the evidence established beyond issue the fact that plaintiff lost his usable vision as the result of disease. We overrule these points.

Defendants pleaded as a defense that plaintiff did not furnish notice and proof of loss to the International Secretary-Treasurer of the Brotherhood within thirty days, nor within a reasonable time after determination of such loss, as required by Section 13 of the Constitution and By-Laws of the Brotherhood. This section provides:

"Sec. 13. Any insured member of the International Brotherhood, or other insured persons, who shall suffer such loss entitling them to benefits provided for herein shall, *after determination of such loss,* cause notice to be given to the International Secretary-Treasurer within thirty (30) days unless prevented from doing so by unavoidable circumstances. Proof of such loss shall be given the International Secretary-Treasurer upon forms furnished for that purpose, and upon the furnishing of such proof, they shall be entitled to the benefits provided for such loss."

Question No. 1, submitted and answered in the affirmative by the jury, was:

"Question No. 1: Do you find from a preponderance of the evidence that the plaintiff, Roberto Fiol Rodriguez, furnished to the 'Brotherhood notice of loss of sight within a reasonable time *after the occurrence of the said loss?* " (Italics ours)

Appellants present points:

First: That there was no evidence to support this finding; and

Second: That plaintiff failed to discharge the burden resting upon him to establish by sufficient evidence that he furnished proof of loss within a reasonable time after the occurrence of the loss of sight of his left eye.

■ It will be observed that Section 13 requires notice of loss to be given within thirty (30) days after determination of such loss—not after the occurrence thereof, and that there is no requirement as to the time in which proof shall be given, but that it is provided that such proof shall be given the International Secretary-Treasurer upon forms furnished for that purpose. Under Article 5546, R.C.S., the thirty day requirement as to notice was void. All the Brotherhood could require was that notice be given within a reasonable time after determination of the loss. International Brotherhood, etc. v. Huval, supra, 140 Tex. 21, 166 S.W.2d loc. cit. 111 and 112.

■ Since proof of loss was required to be furnished to the International Secretary-Treasurer upon forms furnished for that purpose, we think it clear that the Brotherhood could only insist that proof of loss be furnished within a reasonable time after forms for that purpose were furnished plaintiff after he had given notice of the loss. The second point is therefore without merit.

■ Question No. 1 was more onerous on plaintiff and favorable to defendants than warranted by defendants' pleading or the proof. Obviously there could not be a determination of loss before such loss occurred. The issue elicited a finding as to whether plaintiff furnished notice of loss within a reasonable time after the occurrence thereof, whereas under Section 13 and Article 5546, R.C.S., he was only required to furnish such notice within a reasonable time after the determination of such loss. No issue as to the time when plaintiff lost the sight of his left eye was given or requested. In arriving at their answer to Question No. 1 the jury, under the evidence above outlined, might well have concluded that he did not lose the sight of his eye until it was removed on September 4, 1943. The proof of loss is dated December 1, 1943, and bears a pencil notation indicating that it was received by the Brotherhood on December 3, 1943, exactly ninety days from date of removal of the eye—the minimum period required for stipulations as to notice under Article 5546, supra. The evidence was ample to support the jury's finding. We overrule both points.

■ Defendants objected to the submission of Question No. 1 because the Court failed to define the words "said loss" as employed in that question, and requested the Court to define them as being the loss of sight, indicating a loss of usable vision for practical purposes. The point is made that the words "said loss" as used in Question No. 1 could refer to the loss of the eye-ball. We think such a construction unwarranted—that the words clearly refer to the words "loss of sight" preceding them. We overrule this point.

■ Appellants' points to the effect that the Constitution and By-Laws of the Brotherhood do not constitute a policy of insurance within the meaning of Article 4736, R.C.S. upon which to predicate the penalty and attorneys' fees therein prescribed, are foreclosed against them by the opinion in International Brotherhood, etc., v. Huval, Tex.Civ.App., 101 S.W.2d 1072. It was there held that the Brotherhood was a Fraternal Benefit Society within the purview of Article 4831a, Vernon's Ann.Civ.St., which provides for the same penalty and attorneys fees as those prescribed by Article 4736, if a loss occurs and the Society fails to pay it within sixty days after demand therefor. Although plaintiff specifically relied on Article 4736, in his petition he plead and established facts which warranted a recovery under Article 4831a. We concur in what is said in the Huval case, supra, on this question, especially since when that case reached the Supreme Court on subsequent appeal, the Supreme Court said that the Brotherhood "is an unincorporated labor organization * * * operating as a fraternal benefit society, with local lodges in Texas." We overrule these points.

On direct examination plaintiff testified that when he went to work for the Southern Pacific Railroad on September 28, 1942, he was examined by Dr. Garrett, the railroad doctor; that Dr. Garrett said his vision was 20/20. This was admitted without objection when offered. After two other witnesses had testified, defendants recalled plaintiff and the following question was asked and answer returned:

"Q. Mr. Rodriguez, this morning you stated that in September 1943, when you first went to work for the Southern Pacific, that you were examined by Dr. Garrett, who stated that you had 20/20 vision. Will you tell me how you knew that?" A. Dr. Garrett is a young fellow, kind of playful boy, and he said I was lucky to have 20/20 vision, I don't know if it was that or not."

Defendants then objected to "the statement" as hearsay, and requested that plaintiff's statement made on direct examination be stricken and the jury instructed not to consider it, since it was based on hearsay. The Court construed the question as asking plaintiff how he knew that Dr. Garrett said that he had 20/20 vision, and overruled the objection. The answer that Dr. Garrett "said I was lucky to have 20/20 vision," as well as the direct testimony to this effect, was clearly hearsay. Gulf, C. & S. F. R. Co. v. Baldwin et al., Tex.Civ.App., 2 S.W.2d 520.

It was without probative force and could have no bearing on the issue of whether plaintiff had usable vision for practical purposes in his left eye on January 22, 1943. Such incompetent evidence could not form the basis of a finding on this issue, which was highly controverted. Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628.

That it probably did improperly influence the jury in their consideration thereof within the purview of Rule 434, T.R.C.P., we think apparent. But, as above pointed out, defendants by cross-action sought to cancel the policy issued by the Insurance Co. as to plaintiff because of plaintiff's alleged fraudulent misrepresentations above mentioned. We think the testimony was admissible, not as tending to establish the fact of usable vision, but for the limited purpose of tending to show plaintiff's bona fides on the issue of his alleged fraudulent misrepresentations. Texas Law of Evidence, McCormick & Ray, Sec. 357, p. 445; Wigmore on Evidence, 3rd Ed., Vol. VI, Sec. 1788, 1789, p. 234, et seq.

Defendants made no request that the court limit the testimony for this purpose; the sole request was that it be stricken and the jury instructed not to consider it. Apparently the court failed to act on this request. It would have been improper for the court to have granted it. In the absence of a request therefor, appellants are not entitled to here complain of the court's failure to limit the testimony to the purpose for which it was admissible, or of any prejudicial effect it may have had upon the issue of usable vision. Olvey v. Jones, 137 Tex. 639, loc. cit. 647, 648; 156 S.W.2d 977, loc. cit. 982; Blum Milling Co. v. Moore-Seaver Grain Co., Tex.Com.

App., 277 S.W. 78, loc. cit. 81; Burton v. Roberson, 139 Tex. 562, loc. cit. 570; 164 S.W.2d 624, loc. cit. 528, 143 A.L.R. 1.

■ If we should be mistaken in our view that this testimony was admissible as bearing on plaintiff's bona fides, nevertheless the court did not err in failing to strike plaintiff's statement made on direct examination. The relevant questions asked him and his answers were:

"Q. Do you know how he found your eyes to be at that time? A. Well, he said—

"Q. I say, do you know? A. Oh, yes, sir.

"Q. What did he find about your eyes at that time? A. Well, he said it was 20/20 vision, sir.

"Q. Your vision was 20/20? A. Yes, sir."

Obviously, any testimony plaintiff might give as to Dr. Garrett's findings would be based on hearsay. Had Dr. Garrett's findings been the same as Dr. Schuster's, offered by defendants, and plaintiff had so testified, his testimony would have been favorable to defendants on both the issue of usable vision and the issue of misrepresentations. Defendants could not speculate on what his testimony would be and successfully move to have it stricken when it turned out to be unfavorable to them. They should have timely objected to the questions as clearly calling for hearsay evidence. No valid reason is shown for their not interposing proper objection when the questions were asked, and it does not appear that the Court abused his discretion in failing to grant the motion to strike because it came too late. Missouri Pacific R. Co. v. Lamothe et al., 76 Tex. 219, 13 S.W. 194; El Paso & Southwestern R. Co. v. Smith, 50 Tex.Civ.App. 10, 108 S.W. 988, loc. cit. 994, Writ denied; Dallas Ry. & Terminal Co. v. Wells, Tex.Civ.App., 60 S.W.2d 485, loc. cit. 486, par. 5, and 6, Wr. Refused; Traders & General Ins. Co. v. Wright, Tex.Civ.App., 95 S.W.2d 753, loc. cit. 766, 2nd. col.; affirmed 132 Tex. 172, loc. cit. 178, 123 S.W.2d 314, loc. cits. 317, 318, in which the holding on this point was expressly approved; 41 Tex. Jurisprudence, Sec. 153, pp. 922, 923.

■ Plaintiff's answer that Dr. Garrett "said I was lucky to have 20/20 vision," was responsive to the question asked by defendant's counsel on cross examination. It was "advertently" elicited by defendants, and they cannot complain of the court's action in overruling their objection thereto. 41 Tex.Jur. Sec. 152, p. 922; San Antonio & A. P. R. Co. v. Cockvill, 72 Tex. 613, loc. cit. 619, 10 S.W. 702; Smith v. Oldham, 26 Tex. 533, loc. cit. 537.

■ Appellee concedes that the judgment erroneously awarded interest on the $500 recovery for loss of sight of his left eye from September 6, 1943. Interest on this recovery was allowable only from the date proof of loss 'was furnished. American Nat. Ins. Co. v. Fulghum, Tex.Civ. App., 177 S.W. 1008.

■ The judgment, insofar as it awards recovery against the Brotherhood, is reformed so as to allow interest at six per cent per annum on the $500 recovery for loss of the sight of plaintiff's left eye from December 1, 1943, to date of judgment, and as so reformed it is affirmed. Insofar as the judgment awards recovery against the Insurance Co. it is reversed and the cause remanded. Of course, if plaintiff succeeds in satisfying his claim in full from the Brotherhood he will not be entitled to a second satisfaction from the Insurance Co. International Brotherhood, etc. v. Huval, supra, 140 Tex. 21, 166 S.W. 2d 112, Loc. cit.

Reformed and affirmed in part, and reversed and remanded in part.

SUTTON, J., dissents.

On Motion for Rehearing.

In its motion for a rehearing the Brotherhood points out that Rodriguez testified that Dr. Garrett's statement that he had 20/20 vision was made in September, 1942, when he first went to work for the Southern Pacific, while the fraudulent misrepresentations alleged in the Insurance Company's cross-action were based on an injury alleged to have occurred thereafter, in October, 1942, and hence the statement could have no bearing on Rodriguez's bona fides. The point is well taken.

We withdraw that portion of our opinion holding that Rodriguez's testimony that Dr. Garrett stated that he had 20/20 vision was admissible for the limited purpose of tending to show Rodriguez's bona fides on the issue of his alleged fraudulent misrepresentations.

The motion for rehearing is overruled.

844

SUTTON, Justice (dissenting).

It seems to me this case should not be reversed as against the Insurance Company on the ground there was no proof it insured against the loss claimed by the plaintiff. Both defendants are represented by the same counsel and make the same answer and defenses, and in their joint cross-action seek the same relief. It seems to me a fair construction of their joint answer and cross-action is they admit the Insurance Company insured against the loss the plaintiff sued for. They repeat in both the answer and cross-action, these defendants "say that the allegations hereinafter stated are true." They follow this with the outright admission four times that the Brotherhood "issued to plaintiff a certificate showing that he was insured according to the terms and provisions of Group Policy No. 756100, issued by the defendant, the Occidental Life Insurance Company of California." That certificate recites the benefits plaintiff is entitled to under the Group Policy, including the identical loss for which plaintiff sued. The Brotherhood cannot admit the execution and issuance of the certificate and say the recitations therein are untrue. Both defendants stand together.

Both defendants do more, and repeat in their cross-action the admission and allegation above, and say: "Cross-defendant ant, well knowing that he had lost his eyesight due to his traumatic cataract made application under the following circumstances for the insurance on which he now sues. * * *" (This was the insurance with the Insurance Company and not that provided in the by-laws which accrued to him when he joined the Brotherhood.) Then follows the circumstances with the repetition of the admission of the certificate, containing the recital that he was insured by the Insurance Company for the identical loss he sued for and further: "Said misrepresentation is material to the risk and contributed to the loss alleged in Plaintiff's Original Petition, entitling cross-plaintiffs to cancellation of said insurance benefits to cross-defendant." What insurance benefits? There can be but one answer, those recited in the certificate as being contained in the Group Policy. Then how can a defendant sue to cancel insurance without admitting he wrote it?

These defendants jointly continue: "Defendants say that the allegations here-inafter stated are true." Then follows the statement the Insurance Company issued its policy No. 756100 to the Brotherhood, insuring the members of said Brotherhood, and say: "Said policy was accepted by the International, etc." How did it insure the members? It may be said, it is thought, in the manner the Brotherhood was obligated to "procure." That insurance is fully set out and proved. It seems to the writer the admission could not easily be plainer.

There were no questions about admissions in either the Wann or Huval cases cited, hence an entirely different question is presented.

A defendant should not be permitted to take a position so it may say: "If you find for me on my grounds for cancellation then cancel out the insurance I have written, but if against me then write no judgment against me, for there is no proof that I wrote it."

If there is the admission then the law is elementary.

See 17 T.J.P. 576, Par. 240 and 33 T.J. 643, par. 188; Caulk v. Anderson et al., 120 Tex. 253, 37 S.W.2d 1008 and cases cited; Hubberd v. Crude Oil Co., etc., Tex. Civ.App., 119 S.W.2d 161.