CULPEPPER, Judge.
Plaintiff seeks $600 in benefits allegedly due under an accident insurance policy for the loss of sight of one eye. After a trial on the merits the district judge held for the plaintiff but denied penalties and attorney’s fees. The defendant appealed. Plaintiff did not answer the appeal.
There is no question but that plaintiff’s-left eye was surgically removed on June S, 1962. The defenses urged by the insurer are: (1) The removal of the eye did not result directly from an accident within-90 days prior thereto and (2) Plaintiff had already lost the sight of his left eye as a. result of a prior accident in 1952.
The defendant insurer admits its policy-was in effect in May and June of 1962. It provides benefits of $600 for “loss of sight of one eye”, which is defined as meaning- “* * * the total and irrevocable loss-of the entire sight thereof”, provided such loss “result directly and independently of all other causes” from an accident within' 90 days prior thereto.
We have very little difficulty finding that plaintiff has proved an accident, within the 90-day period. He testified that on May 9, 1962 lie was repairing an automobile radiator in his shop in Jonesville,. Louisiana. Using a rubber bulb, he squirted cleaning acid on the radiator and some-of it spattered into his left eye. His eye burned and he tried to wash it out with-water. Mr. Paul Scott was present in the shop at the time and corroborated plaintiff as to all these details of the accident. The next day plaintiff went to Dr. T. B. White, a general practitioner in Jonesville.. This doctor testified plaintiff gave a history of having spattered acid in his eye- and the doctor testified he found the eye-inflamed and infected. After treating plaintiff’s eye for a few days Dr. White referred him to Dr. Noel T. Simmonds, an eye specialist in Alexandria, who subsequently removed the eye on June 5, 1962. Under this, evidence plaintiff has clearly proved the accident.
*729 The most serious question on appeal is ■whether plaintiff had already lost the sight ■of his left eye in a previous accident. Plaintiff testified that in 1952 his left eye was injured when a piece of steel flew into it. "He was treated by a doctor in New Orleans. After the eye healed the lids were sewed together, but subsequently the sutures ■parted and only about 1/5 of the lids remained together. Plaintiff testified that he ■could distinguish light from darkness and that he could perceive shadows and objects before his eye, but could not tell what they were. He said he could tell when a ■person was present but couldn’t recognize who it was. He also said that he could perceive movement. Plaintiff testified this limited vision was useful, particularly in avoiding bumping into objects on the left side ■of his face. (His right eye is good.)
Both Dr. White and Dr. Simmonds testified that from their examination of the eye after the 1962 accident they were of the opinion plaintiff could determine light from darkness, but they did not test the eye and •could not say whether he could perceive objects or movement.
Under this evidence defendant contends plaintiff had already lost the entire sight of ~his left eye and hence had none to lose as a result of the 1962 accident. Defendant •cites the annotation found in 87 A.L.R.2d 486 and notes particularly a summary of the general rule found at page 517 as follows :
“In determining whether there has been a loss of sight within the meaning of the policy the evidence ordinarily relates to such factors as the ability to perceive light, to recognize or distinguish objects, to read, to judge distance or motion, and to move about unassisted. It seems clear that unless blindness in a literal sense is required the insured can recover when he retains only light perception in his injured eye, the mere ability to distinguish light from darkness. The same result seems to follow when the insured with his injured eye can perceive objects, but cannot distinguish or recognize them.”
Of course the above general rule is that which has been applied in cases where the claimant had normal vision before the accident, and was left with impaired vision. See also 45 C.J.S., Verbo Insurance Section 900 c., p. 988.
However, a different question is presented in cases like the present, where the claimant had already suffered some impairment of vision previously and seeks to recover for the loss of the remaining sight caused by the accident covered under the policy. Counsel have not cited, nor have we been able to find, any Louisiana cases dealing with this situation. The annotation found in 87 A.L.R.2d 486, at pages 516-517, cites three cases which considered the question: Zurich General Accident and Liability Insurance Co. v. McDaniel (1936) 192 Ark. 898, 95 S.W.2d 896, which held for the insurer; Ellis County Mutual Aid Insurance Association v. Alexander (Tex.Civ.App.1929), 12 S.W.2d 1072 which held for the defendant; and International Brotherhood of Boiler Makers v. Rodriguez (Tex.Civ.App.1945) 193 S.W.2d 835, which held for the insured. See also the more recent case of Independent Life & Accident Insurance Co. v. Wiggins, (1962) 41 Ala.App. 534, 139 So.2d 619, which held for the insured. Apparently the test applied in all of these cases was whether as a result of the prior accident the insured had lost the. sight in his eye for all useful and practical purposes. In the Independent Life & Accident Ins. Co. case, cited above, the trial judge charged the jury that if the insured had only the ability to distinguish light from darkness, he had no sight, but if he could “ * * * distinguish objects before his eyes * * * ” then he had useful sight, for the loss of which he could recover under the policy.
Keeping in mind the rationale of these cases, let us see exactly what the plaintiff *730 in the present case said about the remaining vision in his left eye:
“Q. Now before you got — prior to the time you got this acid in the eye, could you see any at all out of the eye?
“A. Oh, definitely. I could count your fingers and shadows—
“Q. Could you recognize a person?
“A. I couldn’t recognize them but I could see them when they moved. Yeah.
“Q. In other words, you couldn’t recognize who it was, but you could tell that a person was there.
“A. Yeah.
“Q. Can you tell anything — of course, you have no eye and you can’t see anything now.
“A. No, definitely not.
“Q. In other words, prior to removing this eye, you could see light and observe motion?
“A. Oh yeah. Even after the last damage I had over there, Dr. Simmonds even told me then— he said ‘You can tell light, can’t you’ and I said ‘Yeah’. And the eye had had a lot more damage then that it had previous to that.”
It is our conclusion that before the 1962 accident Mr. Gibson did have some useful vision in his left eye. He could do more than distinguish light from darkness. He could perceive persons and objects and any movement thereof, even though he could not distinguish or recognize them. Such vision, though extremely limited, was useful to him. For the loss of such useful sight he is entitled to recover under the policy.
Our conclusion is fortified by the well established rule in the interpretation of insurance contracts that any ambiguity or doubt is to be construed against the insurer. Albritton v. Firemen’s Fund Insurance Co., 224 La. 522, 70 So.2d 111.
For the reasons assigned, the judgment appealed is affirmed.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.