429 So.2d 513 (1983)
Woodrow W. VALLERY, Plaintiff-Appellant,
v.
ALL AMERICAN LIFE INSURANCE COMPANY, Defendant-Appellee.
No. 82-527.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1983.
Rehearings Denied April 27, 1983.
*514 McLure & McLure, John G. McLure, Alexandria, for plaintiff-appellant.
Bolen & Erwin, Ltd., Charles H. Munsterman, and John B. Honeycutt, Jr., Alexandria, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
LABORDE, Judge.
This appeal involves a claim filed by Woodrow W. Vallery,[1] plaintiff-appellant, against All American Life Insurance Company, defendant-appellee seeking to recover benefits of an Accidental Death and Dismemberment Policy issued to a Woodrow Wilson Vallery. Judgment in favor of All American was entered by the trial court pursuant to a jury verdict. The jury found that Vallery did not suffer an accidental injury to his right eye on December 26, 1980. Vallery appeals. Finding the jury verdict to be clearly wrong, we reverse and render judgment in favor of Elouise Norris Blackshear, executrix of Woodrow W. Vallery's estate, and against All American in the amount of $50,000 with legal interest from date of judgment until paid.
The issues raised on appeal are as follows:
1) Whether or not the trial court erred in denying Vallery's motion for directed verdict at the close of evidence;
2) Whether or not the jury erred in finding no accident occurred;
3) Whether or not the trial court/jury was correct in not awarding policy benefits; and correct in not awarding penalties and attorney's fees;
4) Whether or not the trial court was correct in its rulings on the admissability of the evidence;

*515 5) Whether or not the trial court erred in refusing instructions to the jury requested by Vallery;
6) Whether or not LSA-R.S. 22:657 as applied to this case is unconstitutional.
The incident, in which Vallery sustained an injury, occurred behind his residence on December 26, 1980. Vallery was living alone at his residence located at 3309 Levin Street, Alexandria, Louisiana. Vallery stated that he was "weaving some fence wire together" and while "weaving the wire together a loose wire sprung and hit me in the eye". After this alleged accident, Vallery drove himself to Cabrini Hospital. He was examined by Dr. Bernard Patty. Dr. Patty's findings consisted of several perforations of the cornea and the junction of the cornea and the sclera. Vallery was admitted to the hospital and the main course of treatment consisted of antibiotics for infection. The situation worsened and he was referred to Dr. Rachal in New Orleans. Dr. Rachal conducted a vitrectomy and lensectomy. Vallery's visual acuity throughout the follow-up period can be described as bare light perception.
All American had in full force and effect at the time of the alleged accident an Accidental Death and Dismemberment Policy. This policy covered accidental loss of sight. Benefits payable under this policy are $50,000.00 per eye.
Vallery made a claim for the loss of his eye. All American investigated the claim and issued their check in the amount of $50,000.00 to Vallery, but stopped payment on the check when they received information of the prior condition of the eye in question.
On September 21, 1981, Vallery filed his petition in this matter. Vallery alleged in his petition that All American is indebted for Fifty Thousand and no/100 ($50,000.00)Dollars, 50 percent of the principal sum of $100,000 plus 100 percent penalties and reasonable attorney's fees, all with legal interest from December 26, 1980, until paid. Vallery alleged that he suffered an accidental injury, resulting in the irrecoverable loss of the entire sight in the right eye within 120 days of the accident. Further, he alleged that said loss was covered under said policy, and that All American is obligated for penalties and attorney's fees because of the arbitrary and capricious refusal of All American to pay.
On October 23, 1981, All American filed an answer. In their answer, All American denied an accidental injury on December 26, 1980, to the right eye; denied Vallery had sight in the right eye previous to the alleged accident; and denied that any accidental injury caused the loss of sight in the right eye.
A jury trial was held on July 12 and July 13, 1982, and on July 13, 1983, a jury verdict was rendered in favor of All American. The jury answered "No" to the following interrogatory: "Do nine or more of you find that Woodrow Vallery sustained an accidental injury on or about December 26, 1980, involving his right eye?"
The first assignment of error argued by Vallery is that the trial court erred in overruling his motion for a directed verdict. Under LSA-C.C.P. Article 1810, the trial judge had much discretion in determining whether or not a motion for a directed verdict should be granted. Broussard v. Missouri Pacific Railroad Company, 376 So.2d 532 (La.App. 3rd Cir.1979). Finding no abuse by the trial judge, Vallery's assignment of error is without merit.
Secondly, Vallery argues that the only factual issue to be decided was whether or not he had vision in his right eye prior to the alleged accident. Therefore, he contends that the issue of whether or not there was an accident was not properly before the jury. We disagree. The burden is on plaintiff to establish every fact in issue which is essential to his cause of action or right of recovery, including existence of policy sued on, its terms and provisions, and that his claim is within its coverage. B.T.U. Insulators, Inc. v. Maryland Casualty Co., 175 So.2d 899 (La.App. 2nd Cir.1965). Therefore, Vallery must prove an accident occurred before he can recover under the insurance policy.
*516 Vallery contends that the jury erred in finding that he had failed to carry his burden of proof. Questions of fact are generally left to the jury and their findings should not be disturbed unless they are clearly wrong. Soileau v. South Cent. Bell Tel. Co., 406 So.2d 182 (La.1981).
From our review of the record we are convinced that the jury verdict was clearly wrong.
Vallery's testimony was introduced at trial through the use of a deposition given by him prior to his death. He described the accident of December 26, 1980, as follows: "while weaving the wire together a loose wire sprung and hit me in the eye." Dr. Patty, the treating ophthalmologist, testified that he saw Vallery on December 26, 1980, in the emergency room of Cabrini Hospital; that Vallery indicated that "some chain link fence, uh, an edge of the fence which he was unrolling struck him in the eye"; that "the object that struck the front portion of his eye had extended all the way through the cornea and into the lens"; that the physical findings were "compatible with the history" of the injury described. All American did not present any evidence to rebutt the evidence presented by Vallery that an accident had occurred.
We conclude that the jury's finding that Vallery did not sustain an accident is clearly wrong. Rather than remand this matter for a new trial, we are authorized to render any judgment which is just, legal and proper upon the record on appeal. LSA-C.C.P. Art. 2164. When the entire record is before the appellate court, remand for a new trial produces delay of the final outcome and congestion of crowded dockets while adding little to the judicial determination. Therefore, the Court of Appeal should render a judgment on the record before it. Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975).
Vallery is seeking to recover for the loss of sight in his right eye from All American. Since the record is complete and a remand would cause only delay, we will decide whether Vallery can recover from All American.
Vallery has the burden of proving the existence of the policy sued on, its terms and provisions, and that his claim is within its coverage. B.T.U. Insulators, Inc. v. Maryland Casualty Co., supra.
The record discloses that All American had in full force and effect at the time of the accident an Accidental Death and Dismemberment Policy. This policy covered the accidental loss of sight. "Loss" as used in the policy with reference to the eye means "irrecoverable loss of the entire sight thereof".
Since we have concluded that Vallery has proved an accident, the remaining issue is whether there was a loss of sight as defined in the policy.
Vallery had no central vision in his right eye. Vallery admits that this condition has been present since the age of five. Therefore, it is appropriate to rephrase the issue as follows: Did Vallery have any sight to lose?
Vallery contends that he had useful peripheral vision prior to the accident and that his vision allowed him to tell darkness from light; to make out people to the side; to navigate and not bump into walls or doors on his right. After the accident, the vision in Vallery's eye could best be described as bare light perception.
All American denies that a proper claim exists. Their denial is based on the premise that Vallery had no sight in his right eye prior to the accident. Their premise is based on information supplied by an optometrist, Dr. Le Blanc. In Dr. Le Blanc's records someone made the following notation concerning Vallery's right eye: "bad eye" and "sight gone".
The applicable test is whether Vallery had any useful vision prior to the accident. In Gibson v. Combined Insurance Company of America, 171 So.2d 727 (La. App. 3rd Cir.1965), we made the following statement:
"It is our conclusion that before the 1962 accident, Mr. Gibson did have some useful vision in his left eye. He could do *517 more than distinguish light from darkness. He could perceive persons and objects and any movement thereof, even though he could not distinguish or recognize them. Such vision, though extremely limited, was useful to him. For the loss of such useful sight he is entitled to recover under the policy."
Whether Vallery had peripheral vision which gave him some useful vision prior to the accident is a question of fact. Three (3) experts testified as to the vision in Vallery's right eye. Dr. Nachman and Dr. Patty are board certified specialists in the field of opthalmology. The third, Dr. Le Blanc, is an optometrist. Dr. Nachman saw Vallery in 1976. He described the vision available to Vallery in his right eye as of that time as follows:
"It served him for the sole purpose of seeing things to the right, movements, light, dark and large objects, particularly if they are moving. It serves him that purpose on the street in walking in crowds, or it serves him that purpose in operating an automobilehe had a very primitive form of depth perception by virtue of having the two going for him at the same time with peripheral vision in the right, and of course totally healthy eye on the left."
Dr. Patty was the treating medical doctor following the accident. Dr. Patty testified that there was no longer any functional vision in the injured eye after the accident.
"Q. When you last saw Mr. Vallery did he have any functional visual use out of his injured eye?
A No, he didn't."
Dr. Le Blanc saw Vallery on August 27, 1978. Vallery sought glasses for correction of his left eye. The observations of Dr. Le Blanc of the right eye were, "That it was in excess of 2200 `(legal blindness)'". Dr. Le Blanc testified that he did not test for peripheral vision at this time. The notation in his record which states: "Right eye: bad eye and sight gone", was not made by Dr. Le Blanc but by a clerical assistant.
Based upon the above, we conclude that Vallery had useful vision prior to the accident. All American failed to present any evidence to show that Vallery did not have peripheral vision and that the vision he had was not useful to him.
All American denies liability based upon the affirmative defense of fraud. When the insurer seeks to limit or relieve its liability under a policy in existence, the burden of establishing the essential facts rests upon the insured. B.T.U. Insulators v. Maryland Casualty Co., supra. Upon our review of the record, we find that All American failed to establish the fact that a fraud was committed.
For the foregoing reasons, we conclude that Vallery has met his burden of proof and is entitled to recover under the insurance policy for the loss of sight in his right eye.

Statutory Penalties And Attorney Fees
Vallery contends that All American is liable for statutory penalties under LSA-R.S. 22:657. All American denies that LSA-R.S. 22:657 is applicable. They contend that this type of insurance coverage falls under LSA-R.S. 22:658.
The policy in question is an Accidental Death and Dismemberment Policy. As it relates to this case, the policy will pay $50,000 in a lump sum for the loss of an eye. Vallery contends that since it is an accident policy it should fall under LSA-R.S. 22:657. The Supreme Court was faced with a analogous situation in the case of Harmon v. Lumbermens Mutual Casualty Company, 247 La. 263, 170 So.2d 646 (La.1965). The Supreme Court made the following statement:
"A reading of Section A of LSA-R.S. 22:657, supra, clearly shows that the Legislature intended that this section be applicable to small claims (hospital, medical, etc.) and monthly disability payments. Such intent is expressed in the sentence, `The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled *518 to such payments.' Immediately following the preceding sentence is the 100% penalty provision. LSA-R.S. 22:657 expresses no intent to award a 100% penalty on a lump sum which could be as high as $100,000.00. We conclude that the penalty provision and attorney's fees provisions of LSA-R.S. 22:657 are not applicable to plaintiff's claim."
Therefore, we conclude that this type of lump sum payment for the loss of an eye does not fall within the purview of LSA-R.S. 22:657. We find that this policy falls under LSA-R.S. 22:658 which "covers policies other than those specified in R.S. 22:656 and 22:657."
Under LSA-R.S. 22:658, statutory penalties and attorney fees are applicable when the failure to pay the amount of any claim due within 60 days from the receipt of satisfactory proof of loss is arbitrary, capricious, or without probable cause.
All American did not pay Vallery's claim within 60 days. Therefore, the question is whether All American acted arbitrary and capricious when it refused to pay the claim.
Vallery made a claim for the loss of his eye. All American investigated the claim and issued their check in the amount of $50,000 to Vallery, but stopped payment on the check when they received information of the prior condition of the eye in question. They based their denial on information received from Dr. Le Blanc. Vallery came to Dr. Le Blanc on August 27, 1978, because of problems with his left eye. Dr. Le Blanc's office records showed under Patient Complaint, "Right eye: bad eye and sight gone."
Vallery contends that All American was arbitrary and capricious in failing to pursue this matter further to determine if the sight in the right eye was useful.
Under the facts and circumstances of this case, we conclude that All American did not act arbitrary or capricious when it stopped payment on the check. Although legally wrong in its determination of useful sight in the right eye, we cannot say such refusal based on their determination was arbitrary or capricious, otherwise the insurer in a justifiable, though unsuccessful, contest over its liability, would be assessed the statutory penalties. Such holding would, in effect, deny an insurer its day in court. Each case must be decided upon its own facts and circumstances.
In view of our conclusion, the remaining issues raised on appeal will not be discussed.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of plaintiff-appellee, Elouise Norris Vallery Blackshear, executrix of Woodrow W. Vallery estate, and against defendant-appellant, All American Life Insurance Company, in the amount of $50,000 with legal interest from date of judgment until paid. Defendant-appellee, All American Insurance Company, is cast for all costs.
REVERSED AND RENDERED.
DOMENGEAUX, J., concurs and assigns brief reasons.
DOMENGEAUX, Judge, concurring.
I am completely in accord with this reversal. I concur merely to make a brief reference to our disallowance of penalties and attorney's fees. Although I might, under different circumstances, feel that penalties and attorney's fees would be due in this case, I find that the peculiar circumstances herein, and particularly the information secured by the defendant insurer from Doctor Leblanc gave the insurer some basis to deny payment.
NOTES
[1] Woodrow W. Vallery died prior to trial. Elouise Norris Vallery Blackshear, executrix of his estate was substituted as party-plaintiff.