### RED RIVER VALLEY PUB. CO., Inc. v. BRIDGES.

#### No. 14547.

Court of Civil Appeals of Texas. Dallas.
Nov. 21, 1952.

Rehearing Denied Feb. 6, 1953.

Gillespie & Gillespie, Sherman, Sidney L. Samuels; Samuels, Brown, Herman & Scott, Fort Worth, for appellant.

Russell L. Dunn, Sherman, Robert L. Doss and Gullett & Gullett, Denison, for appellee.

YOUNG, Justice.

Appellee's suit was in damages for libel; charging falsity of an article appearing in the April 2nd, 1951 publication of The Sherman Daily Democrat. The jury verdict, following their answer to issue No. 1, fixed actual damages at $4,000, which, in an order subsequent to a plaintiff's judgment, the court reduced to $3,000; appellant duly perfecting an appeal and appellee likewise reserving exception to any reduction in amount of the jury assessment.

The news item in question, allegedly libelous, reads: "Second man fined for molesting child. For the second time within a week, the maximum fine of $207.50 was assessed Monday in Corporation Court against a defendant charged with molesting a minor. A Howe man paid the fine Monday. He was arrested Sunday in a local theatre on complaint of parents of a four-year-old girl. A Sherman man paid the same fine Friday after pleading guilty to a similar charge." Plaintiff's claim of libel is confined to that part of the article reciting that "A Howe man paid the fine Monday"; admitting in pleading and otherwise that on evening of April 1, 1951 he had been arrested by Sherman police officers in a local theatre and lodged in the city jail for an hour or more and then released on bond; asserting however that the arrest was illegal and unlawful, with no "valid or written complaint lodged against him." It was further not disputed that on the police register and in the same connection, was the following entry: "Com-

plaint No. 11–1455—4/1/51 C. L. Bridges, Howe, Texas Molesting a minor (Pamela Jean Termine) ·Age 4, at Plaza Theater. Comp.Wit. Mrs. Mike Termine-McCormick, Garmon, Helms."

Plaintiff lived near the town of Howe, Grayson County. On later investigation of the foregoing charge against him, same was established as completely without foundation; that he was not even in the City of Sherman on the afternoon of April 1 when the offense was allegedly committed; the City Court causing dismissal of the Bridges complaint on June 1, 1951; defendant's publication at the same time carrying the following retraction: "In a spirit of fairness and justice, the Sherman Democrat is printing this statement concerning the good name and reputation of Clifton Bridges, who lives in the vicinity of Howe. On April 1 Mr. Bridges was arrested by the city police and later let out on bond. On Monday, April 2, the Democrat printed a short story stating that 'a man from Howe' had been arrested in a Sherman Theatre on Sunday and had paid a fine in city court. Mr. Bridges' name was not mentioned in the story. Nor was any name used. The complaint against Mr. Bridges was dismissed today and the paper is now privileged to comment on the case for the first time. Clifton Bridges entered suit against the Democrat for damages. In order to get the facts in the case we had our attorney take Mr. Bridges' deposition. The testimony given by Mr. Bridges under oath, and independent investigation convinces us that Mr. Bridges' arrest and being held under bond was unwarranted. While we did not print Clifton Bridges' name in the story, he testified that the fact that he had been arrested and detained by the police became known in Howe even before the story was printed in the Democrat and that it became more generally known after the publication. Although Mr. Bridges states that his friends and others who know him believe him guiltness, we feel it proper to state that the verifiable facts as to his whereabouts on the afternoon of April 1 clearly prove that he is blameless of any act of wrongdoing on that day. While we did not print Mr. Bridges' name, nor in any way con-

nect him with the case, we now make this statement to clear up any rumors or untruthful statements that may have been passed around by word of mouth concerning him."

The jury answered "Yes" to issue No. 1, reading: "Do you find from a preponderance of the evidence that the article in question published in the Sherman Daily Democrat on April 2, 1951, to wit: 'Second man fined for molesting child. For the second time within a week, the maximum fine of $207.50 was assessed Monday in Corporation Court against a defendant charged with molesting a minor. A Howe man paid the fine Monday. He was arrested Sunday in a local theatre on complaint of parents of a four-year-old girl. A Sherman man paid the same fine Friday after pleading guilty to a similar charge', was such that an ordinary reader of said article, and who knew and was acquainted with Clifton Bridges, in reading the same, would understand therefrom that it referred to Clifton Bridges?"

Following are the points advanced on appeal, in essential part: (1) "The verdict and judgment of the trial court are not supported by the evidence, because there was no evidence in the record to establish that the defendant, Red River Valley Publishing Company, Inc., against whom the cause of action was laid, was the owner and publisher of the Sherman Daily Democrat, the newspaper in which the alleged libelous article appeared." The trial court erred (2) "in overruling and in not sustaining defendant's sixth objection to the submission of Special Issue No. 1 in the charge of the court, which objection was to the effect that the article in the newspaper did not identify plaintiff as the person referred to in the article"; (3) "in submitting to the jury the entire article contained in the Sherman Daily Democrat in its issue of April 2, 1951, and in connection therewith in permitting and instructing the jury to find damages in favor of the plaintiff based on the entire article in question"; (3-A) "in its charge to the jury, in not separating that part of the publication in the Sherman Daily Democrat that was true and admitted

to be true by the plaintiff, from that part of the article in question which the plaintiff claimed to be false"; (3-B) "in submitting the entire article as published by the Sherman Daily Democrat as a basis for the recovery of damages by the plaintiff and thus allowing and instructing the jury to consider the entire publication as a basis for the recovery of damages"; (3-C) "in not setting aside the jury's verdict because the jury was allowed to consider the entire article in assessing damages against defendant"; (4) "Inasmuch as the term 'molesting' did not on the face of the language, in the heading of the article, import moral turpitude or licentious conduct on the part of the plaintiff, it was imperative that plaintiff, in order to give the term an injurious meaning, should have pleaded an innuendo under which such extrinsic meaning appeared, and inasmuch as no innuendo was set up, and no proof of any kind offered to show that such term conveyed the impression of moral turpitude to the language, the plaintiff wholly failed to plead or prove a cause of action"; and in point 5, the error "in peremptorily instructing the jury, as it did, to return a verdict for the plaintiff because the question of whether or not the language employed in the article, or in the heading of it, was libelous, was one that should have been submitted to the jury along with the definition of libel, and being a question of fact, was a question exclusively for the jury to determine."

The only testimony elicited by plaintiff on ownership by defendant of the Sherman Daily Democrat was from Ward C. Mayborn, viz.:

"Q State your name, please? A Ward Mayborn.

"Q You live in Sherman? A Yes.

"Q I belive you are the publisher of the Red River Valley Publishing Company or the Sherman Democrat? A Yes, sir.

"Q The Sherman Democrat is the publisher of it? A That's right."

Following a general denial in defendant's amended answer, there was a tacit admission of ownership; its defenses being generally: (1) The article in question was

privileged; (2) entire absence of malice (plaintiff having sued in part for exemplary damages); (3) truth of the article and good faith of defendant in publishing same, based on information furnished by the police department; (4) mitigation of damages by reason of its correction article of later date as already quoted. In same connection and proceeding under Rule 169, T.C.P., defendant had, previous to trial, called on plaintiff to admit the truth of certain matters of fact, inquiry 9 being: "That the story published by defendant and complained of by plaintiff in this cause is unknown to plaintiff's employer and has caused plaintiff no embarrassment or loss of time in connection with his employment." Defendant's motion for peremptory instruction, requested at close of plaintiff's testimony, did not raise the point that plaintiff had failed to establish defendant's ownership of the Sherman Daily Democrat; and was based on other grounds, for instance: "That as a matter of law the article published by the Red River Valley Publishing Company in the Sherman Democrat on April 2, 1951, did not identify the plaintiff or any other person; * * *." In defendant's requested issues and instructions, bearing the court's notation of either "Refused" or "Given in main charge," and likewise in objections of defense counsel to the charge as given, continual reference is made to the *publication by defendant of the article sued upon.*

It was, of course, plaintiff's burden to establish defendant's ownership' of the paper publishing this alleged injurious article, concerning which the above quoted testimony of Mr. Mayborn is manifestly inconclusive. We find it difficult to excuse such state of the record, when counsel could have so easily made proof of the fact of ownership by proper questions or by resort to above mentioned Rule for admission of a fact about which there could be no real controversy. The inadvertence of counsel was perhaps due to their assumption that defendant's ownership was conceded,—an uncertain and undependable premise at best, in view of the rule that defendant's affirmative pleading following

general denial may not be relied on as judicial admissions. Bauman v. Chambers, 91 Tex. 108, 41 S.W. 471; Straffus v. Barclay, 147 Tex. 600, 219 S.W.2d 65. Be this as it may, aforesaid state of the record was not brought to attention of the trial court until presented in amended motion for new trial; complaining then of a matter that was obviously a ground for specific inclusion in its motion for peremptory instruction. Rule 268, T.C.P., reading, "A motion for directed verdict shall state the specific grounds therefor", is remedial and was adopted for benefit of plaintiff and the court. Arnold v. Tarrant Beverage Co., Tex.Civ.App., 215 S.W.2d 894, 895. Its purpose in effect is to require that any attack upon the evidence for material insufficiency should be raised at a time when the court, under Rule 270, might permit the offer of additional evidence "where it clearly appears to be necessary to the due administration of justice"; and comes too late when not revealed until the opposing party is unable to combat it. We consider that appellant corporation is in no better position here than was defendant in Arnold v. Tarrant Beverage Co., supra, where it was precluded from asserting on appeal a ground (lack of authority of agent) omitted from motion for instructed verdict. The court there held: "The motion which was filed by appellees did not, in this case, specify as one of the grounds for directing the verdict, that the evidence was insufficient to go to the jury on the issue of the authority of their agent to make the contract sued on. The judgment of the court expressly states that the directed verdict was granted upon appellees' motion therefor. We must hold that, if the evidence was in fact insufficient to go to the jury on the issue of authority, appellees waived such insufficiency, and the trial court excluded such issue by granting the motion upon the grounds specified. The issue therefore of the authority of the agent is not in the case on appeal."

If we be mistaken in the conclusion reached in preceding paragraph, then it is our opinion that the rule relied upon by appellant (that its general denial has put

in issue a fact admitted in later pleading) is not applicable to the instant record. Conduct of the parties throughout trial assumed the doing of business by defendant under the trade name of Sherman Democrat; its pleading being predicated on the fact of ownership and consistent with no other theory of defense. More precisely in point is Childers v. Texas & N. O. Ry. Co., Tex.Civ.App., 89 S.W.2d 478, 480, where the Austin Court, in resolving a similar question, held: "Appellee urges that its general denial put that question [ownership by R.R. of right of way] in issue and that failure of appellant to establish same by competent proof was fatal. With this we do not agree. The rule announced in Silliman v. Gano, 90 Tex. 637, 646, 39 S.W. 559, 40 S.W. 391, and in Hynes v. Packard, 92 Tex. 44, 50 45 S.W. 562, is not here applicable. In those cases title and ownership of the lands involved was the subject-matter of the lawsuits. In such case, of course, the plaintiff, as against a general denial, must prove the title he asserts to entitle him to recover. Here the ownership of the right of way by appellee was alleged by it in its answer, assumed on the trial and nowhere controverted. It was not under its pleadings such issue as would have, had the case been submitted to the jury either on special issues or under a general charge, been submitted. Both parties alleged it and no question was raised upon the trial as to such ownership or operation. And, clearly, we think the general rule applies that facts alleged by both parties will be accepted as established without proof. Caulk v. Anderson, 120 Tex. 253, 37 S.W. 2d 1008; 33 Tex.Jur., § 188, p. 643; 17 Tex.Jur., § 240, p. 576."

▇▇ After his arrest, Bridges, from the city jail, telephoned his two brothers-in-law, John Gilly and Walter Robbins, who came at once and assisted him in securing bail. The preponderance of testimony, reasonably construed, is to effect that the circumstances of Bridges' arrest and release on bond became pretty generally known in the Howe community the morning of April 2, date of defendant's defamatory article; and defendant's second point that the aforesaid publication, standing alone, refers to no identifiable person, is without merit. The evidence just briefly touched upon is sufficient, in our opinion, to make the matter of plaintiff's identity with the article complained of definitely an issue of fact. "The dafamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff." Newell, Slander and Libel, 4th Ed., p. 257. The following excerpts from Houston Printing Co. v. Moulden, 15 Tex. Civ.App. 574, 41 S.W. 381, 385, are quite relevant: "It was not necessary, to make the article published libelous, that plaintiff should have been named, if he was pointed out by circumstances. The officer in charge of the prisoner, Foreman, was the person libeled, and the facts show that the plaintiff is that person. * * * It is only necessary that the words refer to some person ascertainable from the words used. Any one who was or should become conversant with the facts could not mistake the person and the officer accused. * * * The words applied to plaintiff, and could not apply to any one else. * * * To determine the libelous * * * article as to plaintiff, the jury could look to all the facts and circumstances in evidence relating to the incident published; and it was not necessary that the article, in itself or by itself, should so point to plaintiff as to inform any person that the same did mean and point to him. * * * The rule as to evidence is that the plaintiff in a libel or slander suit may call as witnesses his friends, or those acquainted with the circumstances, to state that on reading the libel they at once concluded that it was aimed at the plaintiff." See also Warren v. Hill, Tex.Civ.App., 77 S.W.2d 322 and MacFadden Publications v. Wilson, Tex. Civ.App., 121 S.W.2d 430, writ ref.

Several points make claim of error in that under issue 2 the jury was permitted to assess damages based on the entire article of April 2, whereas that part relating to plaintiff's arrest, admittedly true, should have been eliminated from their consideration. The issue reads: "What amount of money, if any, if paid now in cash, do you

find from a preponderance of the evidence, if any, would reasonably and fairly compensate the plaintiff, Clifton Bridges, for the damages, if any, sustained by him, directly and proximately caused by the publication of the article in question on April 2, 1951, in the Sherman Daily Democrat, which has been introduced in evidence herein?" As already stated, that part of defendant's article unquestionably false was confined to the statement that a Howe man had paid a fine (of $207.50 for molesting a minor). These further court instructions have reference to issue No. 2: "In answering the preceding issue, you are instructed that you may take into consideration the following matters, or elements, as you find are established by a preponderance of the evidence, and none other: It being undisputed that the publication was made, you are instructed to at least find in favor of plaintiff for a nominal amount. In the event you find and believe from a preponderance of the evidence that the plaintiff is entitled to recover more than nominal damages, then in arriving at the amount you may consider: * * * (then follows an enumeration of specific damage items). You will not consider any damages or injury caused to plaintiff by reason of this arrest, or by reason of the knowledge of plaintiff's arrest and the charge upon which he was arrested, obtained by plaintiff's friends and acquaintances from sources other than the article appearing in defendant's paper. * * * You are further instructed that in considering the damages, if any, sustained by the plaintiff, you will consider only that part of the published article in question which the evidence shows to be false."

■ While the form of said damage issue, standing alone, *does* refer to the entire publication, when it should have been restricted to the defamatory part only, Bell Pub. Co. v. Garrett Engineering Co.,

141 Tex. 51, 170 S.W.2d 197 (Sup. ad.), the truthful portion of said article had been admitted by the plaintiff in both pleading and testimony; and in further view of the charge as a whole, we do not think the jury could reasonably have been led into a consideration of the full publication (truthful and untruthful parts alike) as a basis for the recovery of damages. "* * * It is the settled rule of law that the charge is to be viewed as a whole and each part considered in connection with other parts and if all considered together a jury could not have been misled by a part of the charge, no error is shown. Scott v. Gardner, Tex. Civ.App., 159 S.W.2d 121, writ refused W.M., and cases there cited." Wichita Transit Co. v. Sanders, Tex.Civ.App., 214 S.W.2d 810, 814.

■ Contrary to appellant's argument under point 4, the false portion of the article in question directly imports moral turpitude and licentious conduct on part of the plaintiff. "Where a defamatory meaning is apparent on the face of the libel itself, no innuendo is necessary; though even there the pleader occasionally inserts one to heighten the effect of the words." Newell, Libel and Slander, 4th Ed., p. 588.[1] The court was therefore correct in characterizing the same as inherently libelous. The statement was that a "Howe man" had paid a fine following charges imputing the commission of a crime; at least in violation of a city criminal ordinance; and the evidence need be scanned only casually for the conclusion that plaintiff was thereby exposed to public hatred, contempt, and impairment of reputation. Art. 5430, V.A. C.S.

■ Finally, although an able and conscientious trial judge has determined, under Rule 328, T.R.C.P., that the jury verdict should be reduced to the amount of $3,000, no reason is assigned therefor, either of improper motives on part of jury

1. Plaintiff likewise pled innuendo, viz.: "That said malicious and libelous publication as aforesaid was intended to apply to this plaintiff, and no one else, nor under the circumstances could it apply to any one else other than this plaintiff, and that the plaintiff's family and some of his friends and acquaintances, after reading same were led to believe and did actually believe, that said malicious and libelous publication referred only to this plaintiff and no other person."

or factual insufficiency of the record. "The amount of damages may not be determined alone by what the trial court or reviewing court would have awarded had they been sitting as the triers of facts." Loughry v. Hodges, Tex.Civ.App., 215 S.W.2d 669, 675. Said jury award is not prima facie unreasonable, nor does the evidence preponderate against it. Appellee's cross-point is therefore sustained and his recovery against defendant restored to the amount of $4,000 as fixed in original court entry of date November 2, 1951.

Appellant's points of error, however, are in all things overruled and aforesaid judgment as reformed is hereby affirmed.

### On Rehearing.

CRAMER, Justice.

Appellant has filed a motion for rehearing raising all matters which we on original submission held adversely to it, and specifically attacks our holding that the fact issue raised by the pleadings as to whether appellant is the publisher of the Sherman Democrat was impliedly found in the affirmative by the trial court in support of his judgment. Appellant asserts in substance that the plaintiff wholly failed to make out a case because there was no evidence to support a finding that the Sherman Democrat was published by it, and criticises that part of our holding that the question was not raised in the motion for an instructed verdict.

Because of such criticism, we deem it advisable to write further on the question. It is true that there is no direct statement in the record by a witness specifically stating that the Red River Valley Publishing Company, Inc., is the owner and publisher of the Sherman Democrat, a very fine and informative newspaper of general circulation in North Texas. Notwithstanding such state of the record, there are other ways to establish a fact than by direct evidence. Here, under the evidence recited in the original opinion, as well as the record as a whole, the case was tried by both parties on the theory that the Red River Valley Publishing Company, Inc., published the Sherman Democrat. Under such record the point that it did not so publish the Sherman Democrat, not contained in its motion for instructed verdict, cannot be sustained. Rule 268, V.A.C.S.

As said in New York Life Insurance Co. v. Doerksen, 10 Cir., 75 F.2d 96, 101:

"The rule requiring a motion for a directed verdict in order to test the sufficiency of the evidence springs from the fact that at common law, and under the Seventh Amendment, questions of law only are reviewable on appeal in actions at law. A motion for a directed verdict is necessary to raise the legal question of the sufficiency of the evidence to support a judgment. That such a motion must be specific has an entirely different origin; it is based upon the settled rule of appellate practice designed to expedite litigation by requiring counsel to apprise the trial court and his adversary of his contention, so that the trial court may have the opportunity of ruling on it understandingly, and his adversary the opportunity of meeting the situation if the ruling is adverse. Consequently it has repeatedly been held that defects which lurk in the record, and which could have been remedied if the point had been seasonably raised below, will not avail on appeal. McCandless v. Furlaud, 293 U.S. 67, 55 S.Ct. 42, 79 L. Ed. 202."

The appellant's motion for an instructed verdict did not assert as a reason therefor that there was no proof that it owned or published the Sherman Democrat, but on the contrary in its motion for instructed verdict it did assert: "* * * that as a matter of law *the article published by the Red River Valley Publishing Company in the Sherman Democrat* on April 2, 1951, did not identify the plaintiff or any other person; * * *."

It is no longer the rule in Texas that a party may stand by, without specifically calling a known omission to the attention of the court, and then seek a reversal in the Appellate Court on a matter which un-

der the rules it was his duty to call to the attention of the court in his motion for an instructed verdict; and more especially where it is such a question as that the court could have permitted the opposite party to withdraw his announcement and supply such undisputed overlooked fact.

The new Rules were adopted to eliminate, within reason, pure technicalities, not to perpetuate old ones.

Finding no reversible error in the motion for rehearing, it is

Overruled.

DIXON, C. J., not sitting.