**SOUTHWEST GENERAL CONST. CO.**

v.

**PRICE.**

No. 14772.

Court of Civil Appeals of Texas.

Dallas.

March 26, 1954.

On Motion for Rehearing April 23, 1954.

Jenkens & Bowen, Walter Spradley and A. J. Thuss, Jr., Dallas, for appellant.

Ralph W. Currie, Dallas, for appellee.

CRAMER, Justice.

This action was filed by Fred O. Price, d/b/a Price Electric Company, against L. N. Childress and the Southwest General Construction Company, a corporation.

The history of the case is somewhat unique, in that L. N. Childress, owner, entered into a contract with Fred O. Price, d/b/a Price Electric Company, hereafter referred to as Price, and also separately with Southwest General Construction Company, hereafter referred to as Southwest, using as forms in each instance the American Institute of Architects' "Standard Form of Subcontract" in which it was stated, in the price contract, that the agreement is between Fred O. Price, subcontractor, L. N. Childress, contractor, L. N. Childress, owner, Raymond F. Smith, archi-

856

tect; and attached to such subcontract form there was another form titled "General Conditions of the Contract." Such form was originally intended to be attached as a part of an original contract between the owner and the general contractor and referred to and made a part of all subcontracts by the general contractor.

On the job Childress assumed the position of both owner and general contractor, and treated Price as subcontractor on all electrical work, and the Southwest as subcontractor on all grading, ramps, peaks and crowns of such ramps, etc., all according to plans, specifications and blueprints attached to each of the two subcontracts as a part thereof.

In the trial court Price alleged his contract and that he had substantially performed the same; that Childress, as owner, and as contractor, was in charge of the entire work on the ground, and Southwest in carrying out its subcontract owed him the duty to protect, coordinate, and supervise the entire work and particularly to protect and not injure, cut back, or destroy, or otherwise damage the work he, Price did under his contract; but that notwithstanding such duty, Childress and Southwest breached said duties and jointly and severally failed to exercise ordinary care in that they failed to coordinate and provide adequate supervision of the work, but did direct and operate "a grading machine against, into, and did cut back, damage and destroy 4,500 feet of teleseal wire; 1,200 feet of No. 1ORR burial wire, being the work, material, labor and the installation thereof which had been furnished and performed by * * * "Price, and that such acts of negligence separately and concurring together proximately caused the loss and damage to Price in the sum of $742.48. Further alleged that Childress and the Southwest failed to locate and grade the peaks and crowns of the ramps at the point and distance specified in the plans, specifications and blueprints, but did direct their placement out of place and distance from the point specified in the plans, etc., and thereby did "injure, break, cut and cover, damage and destroy certain

described work and material to his damage of $2,342.56, for all of which they were liable to him in the total sum of $4,000. That after the above alleged matters, and while the contract with reference thereto was being considered, they reached an accord and orally agreed on a settlement thereof under which new settlement Southwest admitted liability to Price for his damage and. Southwest and Childress agreed orally to pay him, Price, "the reasonable cost of $3,085.04 for doing the work, labor and material, then and there agreed to and requested by * * *" Southwest and Childress of Price, and agreed to pay Price $3,085 therefor. He further alleged he did complete the work covered by the oral contract, but that Childress and Southwest refused to pay therefor to his damage in the sum of $5,500, interest, costs, and in addition thereto a reasonable attorney's fee of $2,000.

Southwest denied generally the claim of Price and affirmatively alleged the architect employed by Childress did, at the request of both Southwest and Childress, lay out the location of all ramps, crests, driveways, projection booth, concession stands, drainage areas, etc., on the ground. That his work was done in accordance therewith, and that the work was completed and the architect approved the same; that Childress knew such facts, and as the work progressed, approved his architect's directions; that one Evans, foreman and representative of Childress, was also on the job and knew or should have known the measurements, etc.; that Childress is now estopped to complain that the work was not properly laid out. Southwest further pled that thereafter weather conditions caused the earthwork to settle and shift and it was necessary to regrade and realign the ramps, slopes, grades, etc., and that Childress' representative was on the job and knew or should have known the location thereof, but he did not object, but permitted Southwest to proceed with such work and therefore Childress is estopped to complain thereof; that because of weather conditions he informed Price it was necessary to regrade, and requested Price to remove certain of

his electric lines, etc., buried in the ramps so that he could fix a final grade before topping. Southwest further alleged that Price failed to lay the electric lines in a uniform line but laid them irregularly, "not buried deep enough either in accordance with the plans and specifications, or if there were no plans and specifications as to this, not a reasonable depth as is the custom in such type of electrical work." Further that Price did pull up and lay back some lines on a number of ramps and that Southwest having advised Price as to the nature of its work, its requirements, etc., thereafter believed all lines had been laid back or were to such depth as to permit its regrading, etc. However such lines were not in fact laid back or to such depth as to permit such work and were therefore cut because of the acts of Price or Childress or his architect. That such acts constituted contributory negligence proximately causing Price's injury. Southwest prayed that Price take nothing, etc.

In answer to Childress' claim, Southwest adopted his allegations in his answer to Price and in reply alleged that Childress' actions, indirectly and through his agents and architects, estopped him to deny Southwest had not performed all its contractual obligations.

After the evidence was concluded, the jury in answer to special issues found in substance (1) that Southwest cut the home run wires laid by Price; (2) which was negligence; (3) proximately causing Price's damage; (4) in the sum of $742.48; (5) that prior to the installation of the gravel, Price installed his wires 4½ feet back of the crests of the dirt ramps then existing; (6) that the locations of the crests of the ramps were changed after Price had installed the electrical wiring in question; (7) which made it necessary for Price to make additional expenditures to relocate the speaker post wires; (10) that the reasonable cost to Price as the result of the changed location of the crests was $2,342.56; (11) that Southwest, through one Wales, agreed to pay Price the reasonable cost of relocating wires due to the moving of the location of the crests of the ramps; (12) that Wales had implied authority to so agree; (13) and apparent authority to do so; (14) that Price did not fail to lay the electric lines in a uniform curve in accordance with the layouts of the ramps by Southwest; (17) that Southwest did request Price to lay back wires in an area designated for the drainage ditch in question; (18) but Price did not fail to lay back some of the wires from the designated drainage ditch area as requested by Southwest.

On the verdict the judgment here appealed from was entered and this appeal duly perfected therefrom.

Appellant Southwest briefs thirteen points of error. By points 1 to 10, briefed together, Southwest asserts error of the trial court in submission of issues 5 to 10 inclusive, and are in substance: (1) Southwest owed no duty to Price to prepare the subgrade in any particular manner or applying a flexible base or insulate the asphalt surface treatment in accordance with plans and specifications; (2) there being no privity of contract between Price and Southwest for the performance of their respective portions of the work, therefore Price cannot recover from Southwest either for breach of contract or tort; and (3) it was therefore error to overrule Southwest's objections to issues 6, 8, and 9. (4) There being a total absence of privity of contract and duty between Southwest and Price, it was error to submit issues as to whether or not Southwest had been guilty of negligence or if such negligence was proximate cause of the injury, and in overruling their objections to said issues; (5) the contract of Childress with Price and Southwest calling for no particular performance by each, created no obligations between them; therefore it was error to admit Price's contract in evidence as between Southwest and Childress; (6) because it did not impose any liability or obligation on Southwest; (7) was error to admit in evidence the general conditions of the contract since it created no obligation of Southwest in favor of Price; (8) it was error to permit cross-

examination of witness Wales over Southwest's objection as to the manner in which the grade on the sub-base had been prepared since Southwest was under no obligation to Price to prepare the sub-base in any particular manner; (9) error in permitting cross-examination of witness Metcalf over Southwest's objection which sought to bring out that asphalt · surface treatment had been applied so that the crest of the sub-grade and the crest of the finished surface were at different places since Southwest owed, no obligation to Price to work in any particular manner; and (10) Southwest owed no 'contractual duty to Price to prepare the grades on the ramps in any particular manner; was not liable to Price if the owner accepted or rejected the grades as conforming to the specifications; therefore Southwest could not be liable to Price for negligence in performing its contract.

Appellee counters points 1 to 10 that regardless of any contract, Southwest owed Price the duty not to destroy his work; and Southwest having invited Price to lay his wires a specified distance behind the crest of the dirt ramp, and after the wires were so laid, relocated the ramps so that the wires were no longer the specified distance behind the crest, had the effect of destroying Price's work, for which Southwest is liable to Price since Southwest's contract with Childress provided that Southwest would pay the cost caused by defective work by Southwest, and since the shifting of the ramps was defective work Southwest was liable to Price for the damage caused to his work on the same general job which he at the time knew, or by the exercise of ordinary care could have known, would result therefrom.

The evidence in our opinion shows that all parties knew, and the written contracts so stated, that Childress assumed the position of both owner and contractor, in his dealings with both Price and Southwest, and in his contracts (in subcontract form) with both Southwest and Price; further that the subcontract forms used by Childress with both Southwest and Price designated each as a subcontractor under Childress as contractor.

Under such condition of the record we must construe the instruments used in the light of the ultimate result sought to be achieved by the parties.

So considering the record, we are of the opinion that the owner, Childress, had but one idea in mind,—to complete a drive-in theatre and in doing so to let contracts to two separate contractors to do work which when completed by both would result in the necessary ramps, equipped with lights and electrical apparatus necessary to provide his patrons with space for their automobiles under such an arrangement of the ramps that such patrons might park their automobiles with safety, in such position that they would have a clear view of the screen on which the movies were shown and in such manner that they could be furnished with earphones or a speaker necessary to moving-talking pictures, and that each of the parties to this appeal so understood the instruments.

The fact that the parties agreed in the contract to certain definite conditions ordinarily attached to a subcontract, and said attached conditions provided for the performance of the contracts in such manner as to coordinate their work with each other, shows such intention and understanding by the parties although they used the wrong form of printed contract. Section 1 of each subcontract-form provided:

"The subcontractor agrees to furnish all material and perform all work as described in Section 2 hereof for Drive-In-Theatre for L. N. Childress, hereinafter called the Owner, at Harry Hines Blvd. Dallas, Dallas County, Texas, in accordance with the General Conditions of the Contract between the Owner and the Contractor and in accordance with the Drawings and the Specifications prepared by Roy Smith hereinafter called the Architect, *all of which General Conditions, Drawings and Specifications* signed by the parties thereto or identified by the Architect, form a part of a Contract between the Contractor and the

Owner dated, 7th July, 1950, and hereby *become a part of this Contract."* (Italics ours.)

The general conditions of the contract attached to each of said contracts with Price and Southwest contained, material here, the following provisions:

"The Subcontractor agrees—(a) To be bound to the Contractor by the terms of the Agreement, General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner."

"Article 43: Cutting, Patching and Digging. The Contractor shall do all cutting, fitting, or patching of his work that may be required to make its several parts come together properly and fit it to receive or be received by work of other contractors shown upon, or reasonably implied by, the Drawings and Specifications for the completed structure, and he shall make good after them as the Architect may direct. Any cost caused by defective or ill-timed work shall be borne by the party responsible therefor. The Contractor shall not endanger any work by cutting, digging or otherwise, and shall not cut or alter the work of any other contractor save with the consent of the Architect."

■ On the record as a whole we hold that Childress stood in the legal position of owner, and Southwest and Price as independent original contractors, but who, under the forms of their separate contracts with Childress, were bound by their contracts to coordinate their work so as not to injure each other; and under the general conditions of the contract attached thereto, Price and Southwest each assumed certain duties toward the other which could be, under the answers of the jury to the special issues, a basis for the damages awarded to Price.

It follows that Southwest's points 1 to 10 inclusive must be overruled and Price's counter-points 1 to 3 sustained.

■ Appellant by point 11 asserts there is no evidence that Clarence Wales agreed to pay Price the cost of relocating the wires in question; therefore issues thereon should not have been submitted. Wales did in his evidence deny directly that he had made the agreement; however the witness Evans testified, in substance, material here, as follows: This man was the superintendent for Childress. He testified as to his presence at the conversation between Childress, Wales and Price, and stated: The conversation came up at that time about whether they would relocate the ramps or the wires. There was some discussion as to who would pay for it. He thought Mr. Wales made the statement it would be better to move the wires than it would to relocate the ramps; that it would be much cheaper to put the wires in the right place than to tear up the ramps. The wires could be spliced and made to work, but if they had to relocate the ramps they would have to move all the gravel and put the peaks of the ramps back where they were. The jury found that Wales made the agreement on behalf of appellant; that he had implied authority to make the agreement and that he also had apparent authority to make the agreement.

The witness Hunt, material here, in substance, testified: That with respect to the conversation that occurred between Price, Wales, Childress, and perhaps Evans, he (Hunt) was there; that they had dug down to show Mr. Wales and Mr. Childress a cross section of the dirt to show the gravel peak didn't match the dirt peak, and Mr. Price said he would move the wires if he would be paid for it. Mr. Wales, during the conversation, said if would be cheaper to have us move the wires than it would for them to move the ramps to match the wires, and told Mr. Price to go ahead, that he would see that he (Price) got paid for it.

Witness Price, in substance, material here, testified: After testifying that Mr. Clarence Wales was in charge for Southwest and that the peaks of the ramps, when graveled, were not in the same place as they were when they were dirt. In a conversa-

tion between Childress, Evans, Wales, Price, and three of Price's electricians, Wales was going to show Price where he (Price) had made a mistake; they dug down, and Price showed them where the finished ramp was and that it was not where it was supposed to be, and they agreed. Mr. Wales then said it was their fault and "* * * it would be cheaper for them to pay us to put the wires in the right place to correspond with the finished ramps than it would be for them to re-grade the whole theatre * * *"; that they already owed him $742 and he turned it over to Mr. Childress and said "If you will see that I will get my money, I will go ahead and do the work." Mr. Childress then said, "I will see that you get your money." He (Price)· then went ahead and did the work.

Such evidence raised an issue of fact as to Wales' authority and the jury having found he did have such authority, Point 11 is overruled.

Points 12 and 13 assert there was no evidence that Wales had actual or apparent authority to agree to pay Price for the cost of relocating the wires. Wales in substance testified he was grading foreman for Southwest and had authority to run the job and to deal with Childress so far as the work was concerned; that he had authority to supervise the work for Southwest, the sub-grading and grading; that he was solely in charge.

We think the evidence was sufficient, when taken with the record as a whole, plus the fact that there is no evidence· pointed out to question such testimony, to raise the issue as to his authority. Points 12 and 13 are overruled.

■ Southwest by an amendment of its brief adds point 14 in substance, error in overruling Southwest's motion for an instructed verdict to the effect that plaintiff take nothing as against defendant Southwest Construction Company. We find nothing in the motion for instructed verdict which sets out a specific reason why such motion should be sustained. It therefore does not meet the requirements of Rule 268,

Vernon's Rules of Civil Procedure, in that it does not contain an assignment directly raising the question in the point. Red River Valley Pub. Co. v. Bridges, Tex.Civ. App., 254 S.W.2d 854, ref. n. r. e.

Finding no error in the trial court's judgment, it is

Affirmed.

### On Motion for Rehearing.

On March 26 we affirmed the judgment of the trial court without discussing the· cross-point of appellee Price seeking to reform the judgment of the district court so as to add thereto $500 as attorney's fees. At that time the transcript did not contain a motion for a new trial by appellee in the· district court raising the question. However appellee Price in his motion for rehearing has again raised the question and accompanies the motion for rehearing with a certified copy of his motion for new trial below in which the point is raised and a motion to supplement the transcript by including such motion therein.

■ We have examined the motion and find it is in proper form and should be, and it is, granted and the transcript supplemented as prayed. On consideration of the motion for a new trial, we find the record shows the trial court in his judgment found as follows:

"Be it Further Remembered that, during the trial of said cause, the parties, by agreement made in open court, withdrew from the consideration of the jury the issue as to the applicability and amount of attorney's fees claimed by plaintiff, and by said stipulation and agreement submitted the matter to the court without the intervention of the jury. Be it Further Remembered that on this day the issue as to the attorney's fees was duly presented to the court and that plaintiff thereupon stated. that he did not seek attorney's fees with respect to that part of the cause of action arising out of the cutting of the wires· known as "home run" wires and covered. by special issues Nos. 1 through 4 of the verdict of the jury, but that plaintiff did.

seek recovery of attorney's fees based on the remainder of the cause of action covered by special issues Nos. 5 to 13 of the verdict of the jury. The court finds as a fact that $500.00 is a reasonable fee, if allowed by statute, to the plaintiff, Fred O. Price, for the recovery of that amount for which attorney's fees are sought. The court finds, however, that as a matter of law attorney's fees, as sought herein, are not recoverable."

Art. 2226, Vernon's Ann.Civ.St. provides for reasonable attorney's fees in a case such as the one now before us, and appellee having complied with all the prerequisites necessary to recover such fee and the amount of such fee having been found by the trial court, we must sustain appellee's cross-point.

Appellee's motions to amend transcript and for rehearing are granted, and the judgment below is now reformed so as to add thereto a recovery for $500 attorney's fees, and as so reformed, is affirmed.